PATTERSON, J.
—This suit was instituted by a trustee of a testamentary trust, having in his possession securities of considerable value, constituting a part of the trust estate. The-purpose for which the trust was primarily established and created having been accomplished, its capital, which consists •of personal property only, is in condition to be distributed to ■or among those who may be entitled thereto, freed from the trust. Various defendants having advanced adverse claims to the funds or securities in his hands, the plaintiff filed his bill, praying that judicial construction be given to the will of the testator, and that the rights of the claimants of the fund represented by the securities referred to be settled and determined by the court. The controversy as it comes before us is between those parties, cross service of their answers having been duly made, as required in such cases. The contest arises under a foreign will, and is to be disposed of by the ascertainment and application of rules of foreign law. There are no claims of creditors involved in any way. Under such circumstances, the reasonable and proper course to pursue would appear to be to remit the whole matter of the construction of the will and the distribution of the trust estate to the courts of the country having jurisdiction of the subject-matter and of the administration of the estate, and where that estate must be finally settled and accounted for (Parsons v. Lyman,-20 FL Y. 101; Despard v. Churchill, 53 FT. Y. 198); but in this case the property in the plaintiff’s hands is claimed by residents of the state of Hew York, who assert title thereto under the will •of the testator, and it is urged that, the property being within his jurisdiction, and all the parties who claim as distributees being before the court, the resident claimants should not be subjected to the expense, delay, and uncertainty of judicial proceedings in a foreign land, but that their rights, if any exist, should be protected and enforced in this action. Recognizing the force of that position, we have considered the whole case, and reached the conclusion that the resident claimants have no such right to the property here as would require us to award it to them in this action. 'r
The case comes up on appeal from a judgment entered at *1052 special term, by which construction was given to certain clauses-of the will of James Shaw Taylor, a British subject, and a resident of England, who died in that country in 1862. The will was duly admitted to probate by the court having jurisdiction in England, but. it was never offered for probate in the-state of New York. The testator appointed George W. Taylor, Abel IT. Shaw, and' another person executors of - his will, and trustees of the trusts therein created. George W. Taylor and Shaw duly qualified, and received grant of probate or letters testamentary. The third person never qualified. Shaw died in 1866, and George W. Tajdor in 1879. They had authority by the will of their testator, James Shaw Taylor, to appoint trustees to succeed them. Shaw did not exercise that power, and George W. Taylor continued as sole trustee until his death. He left a will, and appointed the present plaintiff,, Simonson, and John T. Lord, executors thereof. This will was duly proven both in New York and in England. Lord qualified as executor in England, and Simonson in New York. By a provision of this will, but not otherwise, the trusts under the Avill of James Shaw Taylor devolved upon Simonson and Lord as trustees. , The securities now in the plaintiff’s possession Avere situated in New York, and Mr. Lord, on his oavu petition and under authority of a decree of this court, Avas discharged from the trust, and the securities Avere thereafter left in the sole possession, and management of Mr. Simonson". Sometime in 1883, the high court of justice in England, in the chancery division, upon application duly made; appointed William S. Barton, Robert Heap, and Edward Atkinson trustees of the real and personal estate of James Shaw Taylor, in substitution for the original trustees named in the will of that gentleman. Barton and Heap died in 1891. Atkinson, having power to do-so, associated with himself, in the trust, Robert J. Fletcher and Walter Hennop; and they are noAv the trustees of the estate in England, and were acting as such in February, 1892, the date at Avhich the express trust virtually expired.
James Shaw Taylor left, him surviving, an only child, Amelia Hannah Taylor. In 1868 she married the defendant, Joseph Beaumont Atkinson. The other next of kin of JamesShaAV Taylor living at the time of his death were three sisters, Lavinia Waller, Mary Lord, and Sarah Taylor. The last, named died before this action was begun, and Avithout issue. Lavinia Waller died in 1885, leaving children, parties hereto. Mary Lord also died before this action was brought, and her children who survived her, and certain of her grandchildren, whose parent died before Mary Lord did, are defendants also. Amelia Hannah Atkinson (Taylor) died in 1892, without ever having had issue. By her last will and testament, she bequeathed all her estate, except a legacy to her aunt, Mrs. Waller, to her husband, Joseph B. Atkinson. Her will Avas duly proven in England.- The Avill of James Shaw Taylor was. executed in the lifetime of his wife, and in anticipation of other *1053 children being born to him. It-was drawn with great care and particularity, and provided for almost -every conceivable contingency, except the one that occurred, an omission which, from the general structure of the instrument and the comprehensiveness of its provisions, seems to have been not accidental or inadvertent. After granting annuities to certain persons, and making provision for his wife, he gave a legacy of £2,000 sterling to his daughter “ if and when she shall attain the age of twenty-one years, or previously marry.” That is the only direct gift in terms the testator made to his daughter. He devised and bequeathed all his real and personal estate to his executors, in trust to convert the same into money, and (among other things) to invest £2,000, and hold the same in trust “ during the life of my sister Lavinia W aller, the wife of Alfred Waller, of the city of Hew York,” and to “ pay the interest and annual income thereof, and of the investment for the time being representing the same, unto the said Lavinia Waller,” etc., and from and after her decease to hold “ the same legacy, and investments for the time being representing the same, and the interest and income thereof, in trust for all the children, or any child, of my said sister, who, being sons or a son, shall attain the age of twenty-one years, or, being daughters or a daughter, shall attain that age or marry, and, if more than one, in equal shares.” Concerning his estate not otherwise disposed of, the testator left it to his executors, “ in trust for all my children, or any my child, who, being sons or a son, shall attain the age of twenty-one years, or, being daughters or a daughter, shall attain tfiat age or marry, and, if more than one, in equal shares; provided always, and I declare, that the portion or fortune under this my will of my said daughter, Amelia Hannah Taylor, who is at present my only child, shall be held by the trustees or trustee for the time being of this my will, upon trust that they or he do or shall during the life of my said daughter pay the interest and annual income of her said portion or fortune to her, for her sole and separate use, and so that she shall not have power to affect the same by anticipation, and that her receipts alone shall be sufficient discharges therefor, and, from and after her decease, do and shall hold the same portion or fortune, and interest and income thereof, in trust for all her children living at her decease, and for the issue then living of any her child or children who shall then be dead ; all such children and issue, objects of this present trust, to take in equal shares, as tenants in common, if more than one, but so that the issue of my deceased child or deceased children of my said daughter shall, through all degrees, take such share or respective shares only as his, her, or their parent or respective parents would have taken if living at the decease of my said daughter.” It was further provided in the will that until the testator’s daughter attained majority, or died before so doing, or married, the trustees might allow, without liability to account for the appropriation thereof, *1054 £150 sterling annually for her, to be paid “ from and out of the interest and annual income -of all and every of the trust moneys to which she shall under this my will be entitled in. expectancy as aforesaid, and the investments for the time being representing the same.” Provisions are made in the will for accumulations, and for the contingency of the testator dying' leaving no child or issue who, being a daughter* shall attain the age of 21 years or marry,'in which event the trustees are directed “ to hold all the said trust moneys* and the investments for the time being representing the same* and the interest and annual income thereof,” etc., upon and for such and the same trusts and purposes, and with and subject to such and the same powers and provisions, in all respects, as are hereinbefore bequeathed upon trust for the benefit of my said sister Lavinia waller and such her children or child as. aforesaid, and the investments for the time being representing such legacy, and the interest and income thereof, respectively* or as near thereto as circumstances will permit.”
Amelia Hannah Taylor having married, and died without issue and no provision having been made by the will of her father for that contingency, the respective defendants contend in the. court below, and now claim as follows, viz.: (1) Joseph B. Atkinson, the husband of the daughter of the testator, James Shaw Taylor, and the sole residuary legatee under her will, claims to be entitled to all the personal property now in the hands of the plaintiff, on the ground that the trust created for the benefit of the children of James Shaw Taylor vested, on his death, an absolute interest in the whole residuary estate in his daughter, qualified during her life to the receipt of the income only, and to be defeated by the birth of children, and that, upon her death without issue, her estate or interest became indefeasible, and passed to her husband by the terms-, of her will, or under the provisions of the law of England;. or, failing that contention, that if no absolute estate vested in the testator’s daughter, and she took only a life interest in the residuary estate, then intestacy was brought about* and that, the residuary estate being personalty (the realty having been equitably converted), it passed to his next of kin, being such at the time of his death, viz. his daughter* through whose will, or by virtue of marital relations with whom, her husband would now take., (2) The defendants standing in the place of Mary Lord claim that the testator limited the interest of his daughter to one for life ; that there is intestacy as to that residuary portion after her death; and that it now belongs to those who were the next of kin of the. testator, to be ascertained as of that time. (3) The children of Mrs. Waller claim that the testator’s daughter had only a life interest, and that on her death without issue, they took under the will, by virtue of that provision which made a contingent disposition of the residuary estate similar to that relating to the £2,000 legacy to theif mother.
*1055 The learned justice at the special term construed the will in accordance with the contention of the descendants of Mary Lord, and, in his decree, adjudged that the entire legal title to the residuary estate was vested in the trustees, in trust; that the testator’s daughter, Amelia Hannah, took the right only to receive the income of that estate, and had no control or right of disposition over it; that no interest in the corpus of the trust estate was in any manner or in any event vested in, conferred upon, or reserved or granted to her; that, by reason of her death without issue, the testator died intestate as to the residuary estate, such intestacy occurring as of the date of his daughter’s death; that that portion of the residuary estate now in the plaintiff’s hands is held by him for the next of kin of the testator surviving at the time of the death of his daughter; and distribution is directed in tenth parts among them, viz. the children of Mrs. Waller, and the children of certain grandchildren of Mrs. Mary Lord.
We are not at difference with the court below in the conclusion at which it arrived concerning the first branch of the claim of the defendant, Joseph B. Atkinson, and, for the purposes of the decision of this appeal, shall hold that his wife did not take under the will a vested interest in the principal of the residuary estate held in trust by the trustees. Clearly, it is the law of England that where there is an absolute gift, out of which specific interests are subsequently created and declared, on the failure of those specific or particular interests the absolute gift prevails. Whittellv. Dudin, 2 Jac. & W. 279 ; Mayer v. Townsend, 3 Beav. 443; Winckworth v. Winckworth, 8 Beav. 576; Gerrard v. Butler, 20 Beav. 541; Stephens v. Gadsden, Id. 463 ; Carver v. Bowles, 2 Buss. & M. 304; Cooke v. Cooke, 38 Cr. Div. 202. But in those and in other cases declaratory of the rule, and illustrating its application, there was an absolute gift in the first instance, or one positively indicated in unmistakable terms. Where the gift is to be found only in the limitations, and not in words capable, standing alone and dissevered from a qualifying context, of constituting a complete gift, there is not a vested interest in the principal as a gift. Lassence v. Tierney,, 1 Macn. & G. 557; Gompertz v. Gompertz, 2 Phil. Ch. 107; Savage v. Tyers, 7 Ch. App. 356. The rule is stated by Lord Cottenham thus:
“'If a testator leave a legacy absolute as regards his estate,, but restricts the mode of the legatee’s enjoyment of it to secure certain objects for the benefit of the legatee, upon failure of such objects the absolute gift prevails; but if there be no -absolute gift as between the legatee and the estate, but particular modes of enjoyment are prescribed, and those modes of enjoyment fail, the legacy forms part of the testator’s estate, as not having in such event been given away from it. In the latter case the gift is for a particular purpose; in the former the purpose is for the benefit of the legatee as to the whole amount of the legacy, and the directions and restrictions are *1056 to be considered as applicable to a sum no longer part of the testator’s estate, but already the property of/the legatee.” Lassence v. Tierney, supra.
And in Re Merceron’s Trust, 4 Ch. Div. 188, it is said :
“ The rule which is laid down in Mayer v. Townsend and "Whittell v. Dudin, and has been followed by the house of lords, and may be considered as settled, may be stated thus: ‘ Whenever a will gives property to a person absolutely, and then proceeds to dispose of that property for the benefit of the donee for life, and afterwards for children of the donee, and it turns ■out that there are no children to take, the cutting down fails, and the original gift remains; and, as it was absolute, so it remains absolute.’ ”
The question here is purely one of the intention of the testator, James Shaw Taylor. Did he intend an absolute gift to his daughter of the whole residuary estate to be cut down by subsequently carved out contingent interests and defeasances, failing which the integrity of the original gift was to be preserved, and the whole residuary.estate to be at the disposal of the daughter, as her absolute property ? We are speaking now of the intention as gathered from the will and its dispository provisions, and cannot search elsewhere for it. We have looked in vain through this instrument for satisfactory evidence of such intention as that ascribed to the testator by his daughter’s husband. If it is to be found, it is not in mere words of trust for the benefit of certain cestuis que trustent. The description of beneficiaries is not the whole of the gift. By the terms of the trust, the benefit is expressly confined to income, and its bestowal can scarcely be regarded as an absolute gift of that out of which the only benefit given is to arise. It is not contained in the sentence of the trust declaring that trust for the testator’s child or children, but it would arise, if at all, by force of the phrase “ share or fortune of my daughter,” applied to the trust estate. But these words may well be merely those of distinguishing reference, and not of absolute donation. There is no direct gift in the first instance to the daughter, with a trust then constructed upon that gift which would defeat the absolute gift only pro tanto. The absence of direct words of gift to the daughter is not conclusive, but it is a material circumstance. The absolute gift may, doubtless, be incorporated in the trust provisions. Such cases from the English books are cited by counsel. But here the gift of the estate is directly and exclusively to the trustees, is scrupulously kept from the control of or disposal by the daughter. The provision for her is expressly confined to the enjoyment of income, and not even. a power of appointment is given her of the principal. The trustees take the whole title and estate for the purposes of the trust. It is going too far to infer an absolute gift from the mere use of words susceptible of a different construction, and which do not have a fixed and settled judicial meaning. The careful exclusion of words of bequest to the daughter is in this *1057 conuectiou of marked significance. There was a direct gift to her,—that of the £2,000 previously mentioned. The inference would seem to be that that was the only part of his estate the testator intended should be at the absolute disposal of his daughter, or vest absolutely in her under the will. The second branch of the contention of the defendant Joseph B. Atkinson will be examined later.
We have next to consider the claim of the defendants the children of Mrs. Waller. Concurring with the justice at special term in the view that Mrs. Atkinson took only a life interest, we also agree with him in his conclusion that the Waller children do not take under the will the residuary estate they claim. The gift over to Mrs. Waller and her issue was to become operative in the event of the testator’s daughter not attaining the age of 21 years or not marrying. There is no-authority in the court to enlarge or broaden the terms of the will respecting this bequest of a remainder. The argument on behalf of the Waller children is that as the provision of the will now under consideration declares,' in substance, that, if the testator’s daughter should die before attaining full age or marrying all the residue of his estate should go to Mrs.Waller or her children; that “all that stood between the Waller children and this inheritance was the attainment of majority or marriage of Amelia; ” that “ the only influence these conditions could have on the succession was the birth of children to Amelia; ” and “ that in the absence of absolute ownership at any time in Amelia, and in default of her having issue, it is not unreasonable to suppose that the testator intended that same right of succession to have effect.” The whole argument rests on supposition, principally that the testator intended to die fully testate, and to benefit the Waller children next to his daughter. Of course, intestacy will not be adjudged if the contrary can by any reasonable theory be .determined, and the law favors vesting; but we are led by this argument into the very cloud region of speculation. It is inferable from the whole will that the testator did intend to die intestate, as to his residuary estate in default of issue of his daughter, and to leave its distribution to the law of his country. His will was drawn with great precision, evidently by an experienced and able draftsman, who did not servilely follow precedents from books of forms, but who comprehended and iully expressed what was contained in his instructions for the will; and there seems to have been a clear purpose to omit all reference to a disposition over in the event of Amelia’s marrying and not having children. A provision of that character would be about the first thing to suggest itself to an experienced and instructed lawyer, and we cannot import into this will, on a mere hypothetical intention, one that would give this large property to these particular claimants.
But with respect to the judgment of the court below declaring that the residuary estate passed to. the next of kin of *1058 James Shaw Taylor, to be ascertained as of the time of the death of Mrs. Amelia Hannah Atkinson, and awarding the fund in the plaintiff’s hands to the descendants of Mary Lord and to the Waller children, the learned judge in the court below was led into an error by following what was said in Savage v. Burnham, 11 N. Y. 563, but which is entirely at variance with the rule adopted and announced' by the English courts and text writers. The Burnham Case is a leading authority, often followed in our courts on other questions involved in it; but tlié point now under consideration was altogether a subordinate one. There it came up incidentally, as to a share of an estate held in trust for the benefit of the testator’s son Thomas, which share lapsed by reason of the death of Thomas before the period of vesting, and passed to the testator’s next of' kin. It was- held that Thomas was not to be included in the ascertainment of the next of kin, and that “ the devolution of the share of Thomas- must be deemed to have taken place at the time the share had lapsed, and not at the testator’s death.”' The reason stated for so holding is “this avoids the incongruity wThich has been suggested of Thomas taking, as one of the testator’s next of kin, a portion of a share lapsed by his own death.” Ho authority is cited by the very learned and distinguished judge who wrote for the court in that case to support that particular ruling. It was not made in accordance with any contention of counsel. The point wras never taken or claimed or raised in any form. The cause was not heard at the bar, but was submitted on printed arguments, in none of which is there even the most remote reference to such a proposition as the court laid down -respecting the share of Thomas. The question here is, what is the law of England on this subject, not what do we think of its consistency. If we find its judicial expounders and approved text writers declare a certain rule to be the law of that realm, we must be governed by that rule. In matters of contract, on the question of validity we give'effect to foreign law, though contrary to our own (Staples v. Nott, 128 N. Y. 403 : 40 S. B. 416); and the same rule applies to the disposition of the personal property of a decedent, distributable under the statute of a foreign country. To use the language of Allen, J., in Chamberlain v. Chamberlain, 43 N. Y. 424:
“ The law of a testator’s domicile controls as to the formal requisites essential to the validity of a will as a means of transmitting personal property, and the construction of the instrument. Personal property has no locality [the learned judge was speaking in the general sense], and therefore the law of the domicile of the owner governs its transmission, either by last will and testament, or by succession in case of intestacy.”
The question respecting the time at which the next of kin is to be ascertained seems to have arisen in the English courts more particularly in cases in which, on the failure of particular devises or bequests, gifts over have been made specificalh’" by *1059 the testator to next of kin; and as stated by Matins, Y. C., in Be Morley’s Trusts, 25 Wkly. Bep. 825, the general rule is the class is ascertainable at the testator’s death, but in the case of a will, of course, the intention of the testator would prevail if another period were fixed thereby. There are numerous cases holding that, where the gift over is to the next of kin generally, the distributees are not limited to those designated in the statute, but where it is to the next of kin, to be distributed in accordance with the statute of distribution, that statute strictly applies. Where the gift is of a life interest, and, upon the failure of a remainder, the residuary estate passes to the next of kin, which in this case must necessarily be the next of kin under the statute, it has been expressly decided by courts of the highest authority in England that the life tenant, being one of the next of kin, does not prevent a share of the residuary estate passing to him. It ivas said in Wharton v. Barker, 4 Kay & J. 483, that where there is a' limitation by will to one for life, and then, after his decease, to the next of kin of the testator, those who are to take under the designation “ next of kin ” are the persons answering that description at the death of the testator, and not those answering that description at the death of the tenant for life, and that the mere circumstance that the person to whom such previous life interest is bequeathed by the will is also a member of the class answering to the description of the next of kin of the testator at the time of the testator’s death does not prevent the first rule from applying. The learned vice-chancellor in that case further states that, where a person to whom such previous life interest was bequeathed by the will is the only individual so answering to that description, the authorities have not been quite so clear as to the construction to be put upon the gift over. In Bullock v. Downes, 9 H. L. Cas. 1, the residuary estate was given to trustees in trust to pay dividends to the son for life, and after his death to pay an annuity to his son’s widow if he should leave one, and the residue to his son’s children, and then to stand possessed of the same in trust for such persons of his blood as would, under the statute of distributions, have become and been then entitled thereto in case he died intestate. The son married, took the dividends during his life, and died without having had issue. It was held that the persons who were entitled as next of kin were to be ascertained at the death of the testator ; that the son was one of those persons; and that his right as one of the next of kin was not impaired by a previous gift of a life interest in the whole residue ; and, "the testator having left four daughters, the personal repi’esentatives of the son took one-fifth of the residue.
Other cases have been referred to by counsel which fully sustain the same general rule, and we are now to consider particularly whether there is any modification of the rule in a case where the life tenant is the sole next of kin, and which presents the feature of the incongruity referred to in the *1060 Burnham Case. The authorities on this subject have been collated and commented upon in 2 Jarm. Wills (5th Am. from 4th London ed.) p. 677. The learned editor cites various cases, and from them declares that the law on the much-disputed point is settled in the English courts, and that the tenant for life being the sole next of kin is not -sufficient to exclude him from a devise or bequest to the next of kin. The case of Pearce v. Vincent, 1 Cromp. & M. 598, referred to a devise of real estate and as to personalty. Urquhart v. Urquhart, 13 Sim. 613, Seifferth v. Badham, 9 Beav. 370, Nicholson v. Wilson, 14 Sim. 549, and numerous other cases referred to-in the note on page 680, fully sustain the statement of the author. Those cases have been examined, and are in point.
Now, of course, the question in this case does not arise under any express provision of the will. With reference to the subject, the will of James Shaw Taylor is absolutely silent. Such being the case, the residuary estate which is in the hands of the trustees must be held by them upon a resulting trust for those who would be entitled to the fund by the law of England. There is but one law applicable, and that is the statute of distributions in cases of intestacy; and under that statute the person who would be entitled as next of kin of the testator at the time of his death was his daughter, Amelia Hannah Atkinson. Whether it is inconsistent or hot, such is clearly the law which controls this case. But from the mere fact of the testator intending his daughter should not take under the will the deduction is not inevitable that it was his purpose she should not take as next of kin under the statute. The intention of the testator may reasonably have been to prevent the disposition of his residuary estate depending upon the caprice of his daughter, or possibly subjected to the interference of designing strangers exerting an influence upon an inexperienced woman; and, as has been well said, it is fair to infer that the testator concluded to leave the disposition of this residuary estate to the law, and not to make any disposition of it beyond a certain point, and to let it go to those to whom the law would give it.
Having reached the conclusion that the resident claimants, namely, the children of Mrs. Waller, are not entitled to the fund in the hands of the plaintiff, and that the distribution should not he made as decreed by the learned judge at special term, it becomes unnecessary for us to award the fund to any of the claimants, but merely to reverse the judgment of the court below, and direct that the fund or property now in the hands of the plaintiff be transmitted to the trustees in England, appointed by the high court of justice, in order that distribution may be made in accordance with the statute of that country. The property here is only a part of the trust estate, the bulk of which we understand is in the possession of the trustees in England, and the whole assets may there be subjected to charges and burdens of which we have no knowledge *1061 or information, and for which those trustees may be compelled to account; and it is important to the protection of the interest of Mr. John T. Lord that the fund now in Yeyr York should be transferred to the English trustees, as there- may be a possibility of his being held accountable for transferring the sole possession to Mr. Simonson.
The judgment of the court below must be reversed, and judgment entered in accordance with this opinion, and providing for an accounting by the plaintiff, to be had before the referee named in the decree of the special term, the plaintiff to be allowed the compensation to which he is entitled by law, and the costs and expenses of this action.
All concur.