## CLARK v. CAMMANN et al.

(Supreme Court, Appellate Division, First Department. February 5, 1897.)

1. WILL—CONSTRUCTION—VESTING OF BEQUEST.

Under a devise to trustees to convert, and pay the income of the proceeds to testator's widow for life, and after her death to pay the income of $10,000 thereof to M. for life, and on her death to divide the $10,000 among her children, the gift to the children does not vest, they predeceasing her.

2. SAME—LEGATEES.

A will giving money in trust to pay the income to M. for life, and on her death to pay and divide the principal to and among her children, "and to their lawful representatives, forever," the issue of any child then dead to take his parent's share, uses "lawful representatives" in the sense of executors, and does not thereby designate alternative beneficiaries in case of death of all the children without issue before their mother.

3. SAME—LAPSED LEGACY—DISTRIBUTEES.

The distributees of a lapsed legacy arising from a devise to trustees to convert, and to pay the income to testator's wife for life, and on her death to pay the income of $10,000 thereof to M. for life, and on her death to divide the principal among her children, all of whom died without issue before her, are those who were at the death of testator entitled under the then statute of distribution.

Appeal from judgment on report of referee.

Action by M. Irving Clark, as trustee of Mary Ann Gillespie under the will of Thomas L. Clark, deceased, against Henry J. Cammann and others. From the judgment, certain of the defendants appeal. Modified.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

David McClure, for appellant Wilmerding.

William C. Cammann, for appellant Cammann.

Mortimer C. Addoms, for appellant Mary A. Avery.

Henry A. Forster, for appellants Kane and Wolf.

William L. Clark, for appellant Walter B. Johnson, Committee of Mary E. Carroll.

Chas. M. Beecker, for respondent Edward M. Clark.

Tarrant Putnam, for respondents Isabella Hoffman and others.

Chas. S. Martin, for respondents Kent and others.

Henry A. Prince, for respondents William N. Clark and others.

RUMSEY, J. During the year 1853, Thomas L. Clark, of the city of New York, died, leaving a last will and testament, by which certain trusts were created, of which the plaintiff subsequently became the trustee. He has brought this action after the death of the beneficiaries of the trust, asking that the court determine who are entitled to the fund now in his hands, and for a distribution of that fund according to that determination. The action requires, at the hands of the court, a construction of that portion of the will creating the trust. By the clause of the will in question, the testator devised all his real and personal estate to his trustees, with directions to convert the real estate into personalty, and to invest the proceeds, and pay the income to his wife for her life, and, after her death, the will provided that:

"As to the ten thousand dollars of the principal moneys to be invested as aforesaid, my said executors and trustees shall stand possessed of the same in trust, to apply the interest thereof to the use of my niece Mary Ann, the wife of my executor George D. H. Gillespie, for and during her natural life, so as she may not anticipate the same, and, from and immediately after her decease, upon trust to pay over and divide the said principle sum of $10,000 unto and among all her children, share and share alike, and to their lawful representatives, forever, as tenants in common, per capita, the issue of any such child who may then be dead to take his or her deceased parent's share."

At the death of the testator, Mrs. Gillespie had two sons. Both of them, however, died in her lifetime, neither having had children; so that, at the time of the death of Mrs. Gillespie, in 1894, she had living neither any children nor the issue of any children. This being the state of affairs, the trustee brought this action.

At the hearing before the referee, four different sets of people appeared, and claimed to be entitled to this fund of $10,000. One claim was made by those who were either next of kin of the deceased widow of Mrs. Gillespie's son, or legatees under the will of the deceased father of Mrs. Gillespie's children. They claimed that the gift vested in the children at the death of Mr. Clark, and these

claimants, as representing them, were entitled to the whole princi-
pal sum of $10,000.    Another claim was made by those who in-
sisted that they were the next of kin of the children, and were en-
titled to have this money paid to them by virtue of that portion of
the will quoted above, which directed, as they said, that it should
be paid to the lawful representatives of the children.    The remain-
ing claimants were the next of kin or the personal representatives
of the next of kin of the testator, and they claimed that this gift
to the children never vested, but that it was a lapsed legacy, and
went to the next of kin of the testator.    The dispute between these
two sets of claimants was whether the legacy should be regarded
as having lapsed at the death of the testator, or at the death of
Mrs. Gillespie, in 1894.  If it lapsed as of the death of the tes-
tator, it went, of course, to all those who at that time were en-
titled to his personal estate under the statute of distributions.  If,
on the contrary, it was regarded as having lapsed at the time of
the death of Mrs. Gillespie in 1894, then it was claimed that the
fund went only to that person who at that time answered the de-
scription of the next of kin of the testator.    Between these four
classes of claims the referee decided that the gift to the children
did not vest, but was contingent upon their surviving their mother;
that, as at the death of Mrs. Gillespie there were neither children
nor issue of children, the gift failed; and that, being a lapsed leg-
acy, it was property undisposed of by the will, and went to those
who were the next of kin of the testator at the time of his death.
Whether that conclusion of the referee was correct is the ques-
tion presented by this appeal.

This question is to be decided solely upon consideration of that
portion of the will of Thomas L. Clark quoted above.    An exami-
nation of it shows that the trustees held all the property as one
fund, for the benefit of the wife of Mr. Clark during her life, and
the fund of $10,000 for the benefit of Mrs. Gillespie only came into
existence after the death of Mrs. Clark, the wife of the testator,
and its existence was dependent upon the survival of Mrs. Clark
by Mrs. Gillespie.  When, however, it appeared that Mrs. Gillespie
had survived her mother, this fund of $10,000 was set apart for
her benefit.    During her life, the trustees were required to pay the
income of it to her.    The will did not give the fund, after her death,
directly to anybody.    The provision of the will was that it was to
be paid over to, and divided among, all her children, and that the
issue of any child who was dead was to take his or her deceased
parent's share.    That necessarily implies that the children or the
descendants of the children of Mrs. Gillespie were to be the ob-
jects of the testator's bounty.    This bounty they were to receive,
not by virtue of a direct gift from the testator, but through the
medium of a power in trust vested in a trustee, to be executed
after the death of their mother; so that the executors and trus-
tees might devote the income of the estate, until the death of Mrs.
Gillespie, to such purposes as the direction of the testator had re-
quired.    The distribution, therefore, was postponed as a necessary
part of the scheme of the will, and, as has been said, "futurity is

annexed to the substance of the gift." The case is therefore within that class of cases which establish the principle that, where final division and distribution is to be made among a class, the benefits of the will must be confined to those persons who are included within the class at the date when the distribution or division is directed to be made. In such cases the gift is contingent upon the survivorship, and that survivorship, at the time of the distribution, is an essential condition to the vesting of an interest in the subject of the gift. Delafield v. Shipman, 103 N. Y. 463, 9 N. E. 184; In re Baer, 147 N. Y. 348, 41 N. E. 702; In re Allen, 151 N. Y. 243, 45 N. E. 554. This conclusion disposes of the claims of these defendants who insist that they are entitled to take this fund because it vested in the children of Mrs. Gillespie under the will.

But another class of claimants insist that they are entitled to this fund because the testator directed that it should be paid "to all her children, share and share alike, and to their lawful representatives, forever." These claimants contend that the words "lawful representatives" should be construed to mean next of kin, and that the direction to pay to the lawful representatives of the children should be held to be a substituted gift to the next of kin in case there were no children living at the time when distribution was to be made. An examination of the will shows that the testator provided for the contingency which might take place if Mrs. Gillespie's children should die before her, because he directed that the fund should be distributed among the children and the issue of such children as should be dead; the words of the will being that "the issue of any such child who may then be dead to take his or her deceased parent's share." The testator thus provided for the death of either of Mrs. Gillespie's children leaving issue. If he had intended to provide for any other contingency, it is fair to suppose that he would have done it by words apt for the purpose, and not by indirection; and it is not at all likely that he intended to use the words "lawful representatives" for the purpose of providing for another contingency which was of no particular interest to him, and probably never occurred to him. The reading of the clause shows quite clearly, we think, that the words "lawful representatives" were not used to signify the persons who are substituted as takers of the gift, or, alternatively, to their lawful representatives, as would have been the case had those representatives been intended to take in the place of the children, but to pay to the children and their lawful representatives. These words cannot be construed to mean the next of kin in their ordinary and usual significance, because they are usually construed to mean executors or administrators. Geoffroy v. Gilbert, 5 App. Div. 98, 38 N. Y. Supp. 643, and cases cited. Unless their meaning is explained and altered by the context, that signification must be given to them. There is nothing in the context here which would wrest the words from their true meaning, and therefore we conclude that they are used here to signify the nature of the estate which the children would take in this fund after it had been paid over to them, and

not to specify any individuals who would receive it in case there were no children living. The same construction was given to substantially the same words by the learned surrogate of this county in Phyfe v. Phyfe, 3 Bradf. Sur. 45, where they seem to have been used in the same sense and in almost the same connection. See, also, In re Allen, 151 N. Y. 243, 45 N. E. 554. We conclude, therefore, that this was a lapsed legacy. Ordinarily, a legacy is said to lapse when the legatee has died before the testator, but the same expression may properly be used to describe a legacy which has failed either because of its invalidity, or because the contingency upon which alone it was to vest has not taken place. Van Wyck v. Bloodgood, 1 Bradf. Sur. 154.

All concede that, this legacy having lapsed, it went to the next of kin of the testator, and the only dispute left to be settled is whether it should go to those persons who answered that description at the time of the death of the testator, or only to such persons as answered that description at the time when the life estate of Mrs. Gillespie came to an end. Mrs. Avery, who was the sole next of kin of the testator at the time of the death of Mrs. Gillespie, claims that the gift lapsed at the death of Mrs. Gillespie, and not at the death of the testator, and that the fund should be given to her, and not to those who, at the time of the death of the testator, would be entitled under the statute of distributions. As we have seen, the interest of the children of Mrs. Gillespie was contingent upon their surviving their mother. Even then there was no direct gift to them, but a right to receive a portion of the $10,000 contingent on their living at the time when the life estate of their mother came to an end. The only thing which the testator disposed of by his will was this contingent right. He gave to his executors and trustees the title to this property for the purpose of executing the trusts created by the will. They took by that devise just so great an estate as was necessary to enable them to execute those trusts. That estate was for the life of Mrs. Clark and Mrs. Gillespie. How far it extended after the falling in of those two lives depended upon the existence of the contingency upon which alone the money was payable to the children. If, for any reason, that contingency should fail, the estate of the trustee failed with it. There was left, therefore, at the time of the death of the testator, a residue of the estate which would commence in possession, on the termination of the life estates, in case the contingencies did not take effect. This was a reversionary interest in personal property, which is recognized by the statutes of the state in regard to personal property, as well as real property. 1 Rev. St. p. 773, § 2; Id. p. 723, § 12. That reversionary interest came into existence when the will took effect, just as much as did the contingent interest of these children or the estate to the trustees. When it took effect, it vested in those persons who were then entitled to share in the testator's estate under the statute of distributions; and, while it could not vest in them in possession until the contingent interest of the children had failed, they did not lose it by reason of the delay, but it ran along side by side with the

possible estate to the children, to take effect or to be destroyed as the contingent estate of the children failed or became vested.

This interest, therefore, was an estate of the testator not disposed of by the will; and it follows the usual rule that the personal property of the testator not disposed of by the will goes to those who are entitled under the statute of distributions at the time of his death. The rule in that regard is laid down by the chancellor in the case of Hoes v. Van Hoesen, 1 Barb. Ch. 379. He says:

"Where a reversionary interest in personal property is not disposed of by the will of the testator, it does not necessarily belong to those who may happen to be his next of kin at the termination of the particular estate, or interest in such property, which is bequeathed by him, but as an interest in property undisposed of by the will, it belongs to the widow and next of kin of the decedent, who are entitled to the distributive shares in such unbequeathed interest at the death of the testator; and, if any of them have died without having disposed of their interests therein, their shares go to their personal representatives, as a part of the personal estate of such decedents."

Greenland v. Waddell, 116 N. Y. 234, 245, 22 N. E. 367.

This rule of the chancellor is well established by authority both in this country and England, as has been shown by the opinion in the case of Simonson v. Waller, 9 App. Div. 503, 41 N. Y. Supp. 662, where the question was thoroughly examined. Some doubt has been thrown upon it by a dictum of Judge Comstock contained in his opinion in the case of Savage v. Burnham, 17 N. Y. 561, 573. The circumstances under which Judge Comstock reached his conclusion upon that point are well stated in the case of Simonson v. Waller, supra. While Savage v. Burnham has been cited often and followed upon other points, it does not appear that, upon the particular point involved here, it has ever been cited or approved. It is noticeable that the conclusion reached by Judge Comstock in that case might equally well have been reached upon the principle that the legacy of Thomas was undisposed of by the will, and went to those who were the next of kin of the testator at the time of his death, because it so happened that the next of kin of the testator at the time of his death, who would have taken this legacy had it been regarded as undisposed of then, were the same persons who did take it under the decision of Judge Comstock, so that while the reason given by Judge Comstock was perhaps in conflict with the principle laid down by the chancellor in Hoes v. Van Hoesen, and which we have reached here, he arrived at precisely the same result. While we have great respect for the learned judge who wrote the opinion in Savage v. Burnham, yet his dictum on this subject is so greatly adverse to the great body of authorities both in this country and in England that we cannot yield to it here, unsupported, as it is, by any adjudged case.

There was no general residuary bequest in this will. The only residuum spoken of was the rest and residue of the principal moneys, excluding the $10,000 fund which is the subject of this action. That fund, therefore, went to those who were entitled under the statute of distributions at the time of the death of the tes-

tator. Those persons were his widow and next of kin. Hoes v. Van Hoesen, supra.

The will provides that the devises and bequests made to Mrs. Clark, the widow of the testator, are intended to be in lieu and satisfaction of every claim of dower and thirds which she might have to his estate or effects, real or personal, or any part thereof. For that reason the next of kin of the widow have no interest in this fund, and the conclusion of the referee that it should be divided among the next of kin of the testator at the time of his death is correct, and the judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.