(89 Misc. Rep. 345)

## In re ROBBINS' ESTATE.

(Surrogate's Court, New York County. February 2, 1915.)

1. EXECUTORS AND ADMINISTRATORS ☞506—SETTLEMENT OF ACCOUNT—EVIDENCE—ASSIGNMENT TO EXECUTRICES.

In proceedings to settle the account of executrices, an assignment to the executrices of all interest in the testator's estate, executed by the executrix and legatee under the will of the brother, who had been heir at law of the testator, was improperly excluded from evidence, since the rights of the contestants, the present next of kin, were determined by construction of the testator's will, as modified by such assignment.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2169–2177; Dec. Dig. ☞506.]

2. WILLS ☞614—CONSTRUCTION—BEQUEST OF LIFE ESTATE.

Testator's will provided: "Fourth. All the rest, residue, and remainder of my estate I place in trust for my brother during his lifetime. Fifth. In case that I shall die leaving no issue living and my brother shall have deceased also, I give, devise and bequeath all the property and estate in trust for my brother to I., E., and C." *Held* that such clauses of the will vested a life estate in the brother, with remainder to I., E., and C.; the only effect of the words "and my brother shall have deceased also" being to emphasize that the bequest in the fifth paragraph was a remainder interest.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1393–1416; Dec. Dig. ☞614.]

3. WILLS ☞455—CONSTRUCTION—TRANSPOSITION OF WORDS AND PHRASES.

Where the language of a will is inexact or ambiguous, courts may transpose or insert words or phrases, or leave out or insert provisions, in order to effectuate an intention that may be gathered from the whole text with reasonable certainty.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 972, 973, 976; Dec. Dig. ☞455.]

4. DESCENT AND DISTRIBUTION ☞72—RELEASE OF REMAINDER INTEREST IN RESIDUARY ESTATE—"RELEASE."

A widow of testator's brother, legatee of a life estate, executed to testator's executrices the following release: "I, E. R., in consideration, etc., do hereby, for myself, heirs, executors, administrators and assigns, remise, release and forever discharge the estate of the [testator] and the said executrices, their successors, heirs, executors and administrators, from all claims and demands, if any, I have personally and as executrix and legatee under the will of M. R. [testator's brother] against said estate of [testator] and said executrices." In proceedings for the settlement of the executrices' account, testator's next of kin, after death of his brother, contesting, urged that the brother had taken an undevised remainder interest in the residuary estate as next of kin, so that, when his widow released that interest to the executrices, the contestants then took by operation of law. *Held,* that the "release," such instrument having no meaning other than that of waiver, surrender, or relinquishment, and not being efficacious to pass a right of action, did not transfer or assign the brother's distributive share to the executrices to pass to the contestants.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 221, 222; Dec. Dig. ☞72.

For other definitions, see Words and Phrases, First and Second Series, Release.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. DESCENT AND DISTRIBUTION &⇒72—RELEASE OF REMAINDER INTEREST IN RESIDUARY ESTATE—RELEASE AS ASSIGNMENT.
  Held that, even construed as an assignment, such release was not broad enough to pass the brother's distributive share, since a release effective to transfer an interest under a will may not be efficient to transfer an interest as next of kin.
  [Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 221, 222; Dec. Dig. &⇒72.]

6. WILLS &⇒509—NEXT OF KIN—DESCENT AND DISTRIBUTION.
  Those only are next of kin who are such at time of death of testator.
  [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1103–1105; Dec. Dig. &⇒509.]

7. DESCENT AND DISTRIBUTION &⇒1—STATUTE.
  The statute of descent and distribution operates but once on a death.
  [Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 1–6; Dec. Dig. &⇒1.]

8. DESCENT AND DISTRIBUTION &⇒72—RELEASE OF RIGHTS BY NEXT OF KIN.
  Where there is no will, the release of right and interest by the next of kin, in order to devolve the share released on another, must operate as an assignment, because the law does not construe a release as an assignment.
  [Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 221, 222; Dec. Dig. &⇒72.]

Proceeding on the petition of Caira Robbins and Eliza Parker Robbins, executrices of Winfield Robbins, deceased, for judicial settlement of their account on exceptions to referee's report. Report overruled, and account settled, allowed, and adjusted as filed.

Elbridge G. Duvall, of New York City (Charles H. Beckett, of New York City, of counsel), for executrices.

Daniel J. Mooney, of New York City (John B. Stanchfield and William M. Parke, both of New York City, of counsel), for administrator.

FOWLER, S. The matter comes on upon exceptions to the report of a referee appointed to hear and determine all questions arising upon the judicial settlement of the account of Caira Robbins and Eliza Parker Robbins, executrices of Winfield Robbins, deceased.

Upon the judicial settlement of such accounting of the executrices under the last will and testament of Winfield Robbins, deceased, the special guardian of an incompetent and the ancillary administrator of the goods and chattels which were of Edwin Robbins appear and interpose objections. These objections are serious in their consequences, and, as they have been sustained by the learned referee, result in surcharging the account of the executrices with the large sum of $274,-230.51. This surcharge is composed of one item for an alleged overpayment for transfer taxes made to the states having jurisdiction over the decedent's property; another item represents loss on the sale of securities, which are claimed to have been sold at an inadequate price; another item consists of an alleged overpayment for legal services; but the most important item is for $229,103.67, which it is held by the referee has been erroneously paid out by the accountants for the erec-

tion of a town hall in the town of Arlington, Mass., instead of to the contestants as next of kin. The testator's will provided for the erection of such town hall.

At the outset the question arises for determination whether or not the objectants are entitled to urge their objections. The correct answer to this question depends upon a construction of the will of the testator, and also, under the claim of the objectants, upon the effect of a release hereafter mentioned. The will of the deceased is as follows:

"I, Winfield Robbins, of the city of New York, in the state of New York, do make and declare my last will and testament to be as follows:

"First. I order and direct my executrices hereinafter named to pay all my just debts and funeral expenses, and in case of my death in a foreign land to purchase a plot in a Protestant cemetery in which to place my remains and cause to be erected over the same a monument to cost about ten thousand dollars.

"Second. I give and bequeath legacies as follows: To Edwin Robbins or his wife, ten thousand dollars; to Alvin Robbins, ten thousand dollars; to Ida Francis Robbins, thirty thousand dollars; to Eliza Parker Robbins, thirty thousand dollars; to Caira Robbins, forty thousand dollars and my personal effects of every description.

"Fourth. I give and bequeath to the Robbins Library in the town of Arlington, state of Massachusetts, the sum of twenty-five thousand dollars. The principal is to be kept intact, and the interest of said twenty-five thousand dollars to be devoted to the care, preservation and increase of my collection of prints. The disbursement of the interest of the fund and the supervision of my collection of prints to be under the sole control of Caira Robbins so long as she may desire.

"Fourth. All the rest, residue and remainder of my estate, real or personal, of which I die seized and possessed or in any way or manner interested in or entitled to and wheresoever the same may be situated, I place in trust for my brother Milton Robbins during his lifetime.

"Fifth. In case that I shall die leaving no issue living and my brother shall have deceased also, I give, devise and bequeath all the property and estate in trust for my brother, Milton Robbins, to Ida F. Robbins, Eliza P. Robbins and Caira Robbins, they to take such portion as they may deem necessary to build a town hall in the town of Arlington, Massachusetts, in memory of Amos Robbins, a citizen of New York, born in West Cambridge, the town of Arlington agreeing to remove the Alvin Robbins house from off the present park site.

"Sixth. I hereby nominate and constitute and appoint my cousins Caira Robbins and Eliza Parker Robbins to serve without bonds, and the survivor of them executrice of this my will.

"In witness whereof I have hereunto set my hand and seal this second day of October, one thousand nine hundred and seven.

　　　　　　　　　　　　　　"Winfield Robbins. [Seal.]

"Signed, sealed, published and declared by the testator, Winfield Robbins, as and for his last will and testament in the presence of us, who at his request and in his presence and the presence of each other have hereunto subscribed our names as witnesses.

　　"Vincent Loeser,　[Seal.]　320 West 108th street, New York.
　　"Zenas E. Newall,　[Seal.]　101 North Broadway, Yonkers, N. Y."

It will be incidentally observed that the testator erred in the numbering of the paragraphs of his holographic will. The testator died November 5, 1910. Milton Robbins, mentioned in the paragraph properly numbered "fourth" of the will of the decedent, survived the testator, but died seven weeks thereafter. Milton Robbins left a will by which all of his property was bequeathed to his wife, Emma Robbins, who was also appointed the sole executrix. The testator left him sur-

viving no widow or children, and therefore Milton Robbins was the nearest of kin. Caira Robbins and Eliza Parker Robbins, the executrices, and Ida F. Robbins, their sister, are second cousins of the testator.

On October 3, 1911, the aforementioned Emma Robbins executed a release, which has been given in evidence. It provides as follows:

"Know all men by these presents, that I, Emma Robbins, of New York, N. Y., in consideration of $1 and other valuable considerations to me paid by Eliza Parker Robbins and Caira Robbins, as they are executrices under the will of Winfield Robbins, do hereby, for myself, my heirs, executors, administrators, and assigns, remise, release, and forever discharge the estate of the said Winfield Robbins and the said executrices, their successors, heirs, executors, and administrators, from all claims and demands, if any, I have personally and as executrix and legatee under the will of Milton Robbins against said estate of Winfield Robbins and said executrices.

"Witness my hand and seal this 3d day of October, 1911.

"Emma Robbins. [L. S.]
"In the presence of E. G. Duvall."

[1] During the course of the proceeding the accountants offered also in evidence an assignment, dated May 7, 1913, by which Emma Robbins assigns and sets over unto the executrices all her right, title and interest in the testator's estate, naming the executrices as individual grantees. This instrument was excluded from evidence over the exception of the accountants. The exclusion was, I think, error.

The rights of the contestants and their standing in this proceeding are to be determined by a construction of the portions of the will before set out, as modified by the release and also the assignment, offered in evidence, in so far as it is properly to be considered.

[2] The claim of the contestants is briefly this: That under paragraph fifth of Winfield Robbins' will, the residuary bequest did not vest in the legatees therein named upon the death of Milton Robbins, because Milton Robbins did not predecease the testator, and, further, that as Milton Robbins took a remainder interest as next of kin remaining after the life estate bequeathed to him, the release executed by his sole legatee and legal representative operated to the benefit of the contestants, who after said Milton Robbins are the nearest of kin; that is, their contention is that under the will of Winfield Robbins the remainder interest in the residuary estate was not bequeathed, and therefore Milton Robbins took the same as next of kin, and thereafter when his legal assignee (or testamentary donee) released that interest by operation of law the testator's cousins then took. Therefore, before such cousins can maintain their objections in this proceeding the will must be construed to result in a partial intestacy and the release must be given the legal effect of assigning to the cousins as next of kin what otherwise would be distributed to him whom the law recognizes as the next of kin.

The will of the testator is ambiguous. A literal reading thereof does not, I think, express the testator's real meaning. He did not intend that the three ladies named in the fifth paragraph of the will should take only upon the double contingency of the testator dying without issue and his brother having predeceased him. In the fourth paragraph of the will the testator bequeaths the residuary estate in

trust for the benefit of his brother during his lifetime, and·in the fifth paragraph he indicates an intention that the residuary estate so bequeathed in trust should go to Ida F. Robbins, Eliza P. Robbins, and Caira Robbins. The words "and my brother shall have deceased also" do not, I hold, indicate an intention to make the death of the brother prior to the testator a condition precedent of the bequest to the three ladies named in the fifth paragraph. The only effect that those words have is· to reiterate that the bequest in the fifth paragraph is a remainder interest. It certainly would be a senseless disposition for the testator to say in the fourth paragraph of his will that he gives Milton Robbins a life interest and then in the fifth paragraph to provide that the property which had been so given in trust for Milton Robbins should go to some one else, only if Milton Robbins did not survive the testator; upon that other contingency no trust estate would come ·into existence, and the words "all the property and estate in trust for my brother Milton Robbins" would have to be deemed mere surplusage. What testator really meant was that, in case of his death without issue, then and in that event after the death of the brother the estate theretofore held in trust for the brother should go to the three ladies named.

[3] Where the language of wills has been inexact or ambiguous, the courts frequently transpose or insert words or phrases, or even leave out or insert provisions in order to effectuate an intention that is with reasonable certainty to be gathered from the whole text of the instrument. Dreyer v. Reisman, 202 N. Y. 476, 96 N. E. 90, 36 L. R. A. (N. S.) 618. See, also, Phillips v. Davies, 92 N. Y. 199.

[4, 5] It would therefore seem that the contestants in this proceeding are not in any way interested in the distribution of the decedent's estate. But, even were contestants' construction of the will adopted, the same conclusion would follow. The instrument of release contains no words of assignment. In order to give the contestants any interest in the estate, that instrument must be construed to have the effect (assuming that there was a partial intestacy) of transferring and assigning the distributive share of Milton Robbins as next of kin to collaterals next further removed from the testator. In Amherst College v. Ritch, 151 N. Y. 282, 338, 45 N. E. 876, 892 (37 L. R. A. 305), the Court of Appeals pointed out the distinction between an instrument of release and an assignment and said that, where the word "release" is used in connection with "claims," it never has any other meaning than that of waiver, surrender, or relinquishment, and that no right of action could pass by a release of that nature. The release by its terms does not purport to release any claim which the releasor has as next of kin. Even if it be construed as an assignment, it is not broad enough to transfer a distributive share as next of kin. There is a broad distinction between the interest which a party has' under a will and that which he has as next of kin, and a release effective for one purpose would not be sufficient for the other. For example, in Matter of Estate of Andrews, 104 App. Div. 622, 93 N. Y. Supp. 840, the Appellate Division for the First Department held that a release of an interest by way of legacy did not estop the legatee from asserting a claim as next of kin.

In order to sustain the contention of the contestants, the construction of the instrument as a release would not be sufficient. The mere release to the executrices of the claim of Emma Robbins would not per se transfer that portion of the estate as to which there is an intestacy to the contestants. The cousins are not next of kin. The failure of the testator to dispose of his entire estate would give such portion not disposed of to the next of kin and only to those who are such at the time of the death of the testator.

[6] It is well settled that those only are next of kin who are such at the date of the death of the testator. Clark v. Cammann, 160 N. Y. 315, 54 N. E. 709; Doane v. Mercantile Trust Co., 160 N. Y. 494, 55 N. E. 296; Simonson v. Waller, 9 App. Div. 503, 41 N. Y. Supp. 662. And this is so, even if the tenant for life under the will is the sole next of kin. The release executed by the brother's representative and sole legatee did not exclude him from being the next of kin, and could not make the cousins stand in that relation.

[7] The statute operated once and could not be invoked a second time. In short, the only manner in which the representative of the brother could dispose of his distributive share would be by an assignment, and, as above stated, the release should not be deemed an assignment.

The distinction between a release by a legatee, under a will, and a release by one of the next of kin, where there is no will, is marked. Where a legatee releases the residuary, or where there is not a sufficient residuary clause, the next of kin take; in the one case by virtue of the will and in the other case by the operation of law through intestacy.

[8] But where there is no will the release by next of kin, in order to devolve the share released upon another, must operate as an assignment, because the law does not construe a release as an assignment. The cases of Matter of Wolfe, 179 N. Y. 599, 72 N. E. 1152, and Matter of Cook, 187 N. Y. 253, 79 N. E. 991, well illustrate the distinction between an instrument which is sufficient operating as a release and one which can be sufficient only if operating as an assignment. In the report in Matter of Wolfe in the Appellate Division, 89 App. Div. 349, 354, 85 N. Y. Supp. 949, 953, the court says:

"It may well be that a different question would be presented by a transfer operating under the laws of inheritance or descent. In such a case the transfer is effected by operation of law and calls for no act of volition on the part of the heir or next of kin."

In short, the difficulty in giving the release the effect urged by the contestants is that there is no rule of law which enlarges the release into an assignment. If the contestants take nothing under the release, it is perhaps unimportant to consider the second instrument purporting to be an assignment; but it would seem, no rights having intervened, that the second instrument may be given effect according to its tenor.

The accountants moved to dismiss the objections, and they are dismissed, and the referee's report is overruled. The account and supplemental account are settled, allowed and adjusted as filed. Settle decree accordingly.