MARIANNE CHAMPAGNE *et al. vs.* EUGENIE FORTIN *et al.*

FEBRUARY 27, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker & Condon, JJ.

CONDON, J. This is a bill in equity for the construction of the will of Mary L. Fortin, late of the city of Woonsocket, deceased. Upon being ready for hearing for final decree in the superior court, it was certified to this court for determination in accordance with the mandate of general laws 1938, chapter 545, § 7.

Mary L. Fortin died on July 18, 1919. She left surviving her three sons, John D., Joseph C., and Fred C. Fortin, and one daughter, Mary D. Desjardin. After bequeathing her household furniture and certain other personal property to Fred C. Fortin, she devised all the rest and residue of her estate to him and his heirs in trust. Under said trust each son was given an equal share in the net income thereof, and the daughter was also given such share, but only if her husband was not living. The will also provided that the share of income of any deceased child leaving issue was to be paid to such issue, and, in case of any deceased child

without issue, its share was to go to the surviving child or children of the testatrix.

The will further provided that: "On the death of all of my said children, however, it is my will that my trustee or his successor in office shall convey to the children then living of my children (my grand-children) all of said trust estate, free from the trust here created, in fee simple, to be and remain to them, their heirs and assigns forever." It is this provision and the happening of certain events hereinafter described which have given rise to the present bill for construction.

The testatrix's daughter, Mary D. Desjardin, died intestate without issue on July 28, 1922, leaving her husband surviving her. Joseph C. Fortin died intestate without issue on August 19, 1933, leaving a widow surviving him but now deceased. On March 1, 1938, John D. Fortin died intestate without issue, leaving a widow who is now living. Fred C. Fortin was thus the sole surviving child of the testatrix and at the date of his brother John's death was married and childless. Thereafter, on July 5, 1938, he, in his capacity as trustee, petitioned the superior court for leave to sell the trust estate, which consisted of real estate. This petition was duly heard and granted and a decree was entered in that court authorizing Fred C. Fortin to purchase said real estate. Pursuant to such decree he made a conveyance thereof to himself and his wife Eugenie Y. Fortin as joint tenants.

On September 3, 1941, Fred C. Fortin died testate and without issue. He devised and bequeathed all his real and personal estate to his wife Eugenie Y. Fortin and appointed her executrix of his will. This will has been duly probated in the probate court of the city of Woonsocket and she has been confirmed and has qualified as such executrix.

Complainants are the brother, sisters and the issue of the deceased sisters of the testatrix. They claim title to her estate as her heirs because of the fact that, at the death of Fred C. Fortin, there was no grandchild of the testatrix

in whom the beneficial fee simple could vest under her will. Complainants contend that in the circumstances a resulting trust arose for the benefit of the heirs of the testatrix upon the death of Fred C. Fortin without issue, when it became certain for the first time that there would be no grandchild to take under the will. They also contend that only those answering the description of heirs of the testatrix at such time are entitled to the estate and that they alone answer such description. They further contend that the respondents are estopped from denying such claim because of allegations in the petition of Fred C. Fortin to the superior court for leave to sell the trust estate, to the effect that a trust still existed, even though he was then the last surviving child and that he then knew he would never have children.

Complainants also contend, if we understand them correctly, that the testatrix intended that, in the event of a failure of grandchildren, her property should go to her brother and sisters and their heirs. They seek to show such an intention by testimony of witnesses, who were allowed to testify in the superior court, that the testatrix had told them that she had made her will so that all of her property was to go to her brother and sisters in the event that her children left no issue surviving them. Such testimony was admitted over the objection of the respondents, who contended that there was no ambiguity in the will and therefore such evidence *dehors* the will was inadmissible. Complainants contended that such testimony was admissible and should be considered in construing the testatrix's will, because there was an ambiguity therein as to the testatrix's use of the expression "children then living of my children". And they also claimed that, in connection with such alleged ambiguity, there arose another as to the time when the testatrix intended that the class should be determined in whom the beneficial fee was to vest ultimately if no grandchild survived the death of her last child.

Respondents are Eugenie Y. Fortin, Union Trust Company and the Old Colony Co-operative Bank, and each has filed an answer, but only counsel for Eugenie Y. Fortin has filed a brief and argued in this court. The other respondents are mortgagees to whom Fred C. Fortin, as trustee, had, by leave of the superior court, mortgaged the trust estate. It was agreed at the hearing before us that their interests would be protected irrespective of the outcome of these proceedings. Hence, neither of them filed a brief nor made an oral argument in this court. We shall, therefore, hereinafter consider Eugenie Y. Fortin as though she were the only respondent.

She denies that the complainants are the heirs of the testatrix or that the testatrix intended by her will that they were to be the beneficiaries of her estate in the event that no grandchild survived the death of her last child. She further objects to the consideration by this court of any evidence of testatrix's intention *dehors* the will, on the ground that the testamentary language of the testatrix is clear and unambiguous and therefore parol evidence is not admissible to explain or alter her intention as expressed in her will. Respondent finally contends that there is no ground for the estoppel as alleged by complainants for the reason that Fred C. Fortin's allegations in the bill which he brought as trustee for leave to sell the trust estate are not inconsistent with the respondent's contention herein that he was the sole surviving heir of the testatrix and therefore as such was alone entitled to the equitable reversion in the fee.

We have carefully considered the contention of the complainants that there is a latent ambiguity in the will and we are of the opinion that it is without merit. There being no such ambiguity, evidence *dehors* the will of declarations by testatrix as to her intention cannot be considered. Such is the well-established rule that has long been followed and expounded by this court. *Chapin* v. *Hill,* 1 R. I. 446; *Perry* v. *Hunter,* 2 R. I. 80; *Lewis* v. *Douglass,* 14 R. I. 604; *McGough* v. *Hughes,* 18 R. I. 768; *Matteson* v. *Brown,* 33 R. I.

339; *Hanley* v. *Fernell,* 54 R. I. 84; *Industrial Trust Co.* v. *Hall,* 66 R. I. 201.

But the complainants argue that the language which the testatrix has used in providing for the ultimate disposition of the trust estate "to the children then living of my children" should, under the circumstances, be construed in the same sense as if she used the words "my legal heirs", and that she intended that her property should go to her "heirs at law then living" in the event of no grandchild surviving the death of her last child. This is indeed a strained construction and is without any warrant whatever in the language of the testatrix to support it. Nowhere in her will is there the slightest intimation that she was contemplating any class other than her grandchildren as the ultimate beneficiaries of her residuary estate. Nor is there any expression in her will from which the implication would necessarily arise that she had in mind the possibility of all of her children dying without leaving issue and that, in such event, she would desire her brother and sisters to have her estate. On the contrary, it is obvious that she believed that there would be a surviving grandchild or grandchildren and therefore made no provision over in case of a failure of such grandchildren. In any event there is no room for construing the plain, unambiguous words of the testatrix, "children then living of my children" to mean her "heirs at law then living".

If this were a case where the testatrix had made a gift over to her heirs or had used other language indicating an intention to direct the manner in which and the class to whom disposition of her estate should be made in the event of failure of her express devise to her grandchildren, then the proper construction of such language would be open to argument. But in the instant will we are confronted with a total absence of such a testamentary direction. Therefore, the question as to who is the ultimate beneficiary of the testatrix's estate in the circumstances is not strictly one of testamentary intention. It is really a question of

finding what is the proper rule of law that governs the transmission of the beneficial fee of testatrix's real estate, which she has failed to dispose of completely by her will.

On that question complainants take the position that the testatrix devised all of her residuary estate in fee simple to her trustee; that such legal title never passed out of the trustee and still remains in trust, but on a resulting trust which equity raises for the benefit of the heirs at law of the testatrix; and they further urge that such heirs are to be determined as if she had died immediately following the decease of her son Fred C. Fortin without issue. If these contentions are sound the complainants are the heirs at law and the sole beneficiaries of such resulting trust.

The respondent argues that complainants' position on the question of who is entitled to take is contrary to the precedents in this state and to the great weight of authority elsewhere. She states that whether it is decided that the legal fee is held on a resulting trust or that the interest of the trustee is cut down to a legal life estate with a legal reversion in the heirs it will make no difference. In either case she states that the weight of authority is that the heirs of the testatrix at the time of her death, and not those who answered that description at the termination of the intervening estate, would be entitled to the fee. In support of her position she relies primarily upon *Washington Trust Co.* v. *Chatham Phenix National Bank*, 52 R. I. 35, and also cites the following cases and texts: *Osgood* v. *Thomas*, 45 R. I. 189; *Wood* v. *Mason*, 17 R. I. 99; *Thomas* v. *Rhode Island Hospital Trust Co.*, 50 R. I. 369. Gray on Perpetuities, § 11; 1 Simes on Future Interests, § 46; 1 Scott on Trusts, § 88; 26 R. C. L., § 107.

In the Washington Trust Company case the problem before the court was substantially the same in all respects as the one presented in the instant cause. There was a devise to a trustee in fee simple and a direction to convey the fee to a certain prescribed class, namely, the surviving child or children of the testatrix's son, at the expiration of the in-

tervening beneficial life estate in her son. The son died childless. Without discussing the effect of the devise of the legal fee simple to the trustee, the court, solely on the authority of *Wood* v. *Mason, supra,* treated the devise as if it had been to the trustee for the life of the son with a contingent remainder over to the son's surviving child or children, if any, which contingency never happening, the result was an intestacy as to such remainder.

We think the court reached the correct result but we do not think the way by which they reached it is a satisfactory answer to the contentions so ably argued by the complainants in the instant cause. They have strongly criticized that case, and such criticism seems to us justifiable, at least in part. *Wood* v. *Mason, supra,* upon which the court relied, did not involve a trustee nor was there any testamentary devise containing words of limitation indicating the passing of a fee simple. Unless the court in the Washington Trust Company case, without expressly saying so, took the position that the interposition of a legal estate in fee simple in the trustee in the case before it made no difference, it would seem that the Wood case was not "a decisive and controlling precedent". We have examined the papers in the Washington Trust Company case and find that only one brief was filed therein, and in that brief counsel for the complainants argued that the Wood case controlled. In this view they were expressly joined by counsel for the respondents. The court was thus deprived of the great aid which so often comes from the earnest, able advocacy of adversary views.

Our own view is that the Washington Trust Company case should have been decided on the theory of a resulting trust. Under this view it was only necessary for the court in that case to treat the equitable fee in remainder to the surviving child or children of her son as being wholly contingent at the death of the testatrix, thus vesting in her heirs at the time of her death an equitable reversion in fee

subject to being divested on the happening of the contingency therein described.

There is no question that, under the language of the will in the instant case, the trustee took a fee simple. All the necessary words of limitation are expressed in the devise to the trustee, and there is no other qualifying language of the testatrix indicating or showing that she intended to devise a less estate. It is therefore unnecessary to invoke G. L. 1938, chap. 566, § 15, or to cite *Ames* v. *Ames*, 15 R. I. 12, as complainants do. We are of the opinion, therefore, that the legal fee vested in the trustee at the death of the testatrix.

The express trust for the benefit of her grandchildren under the trust devise of the testatrix has clearly failed. She has made no provision for such a contingency. Yet it is obvious that she did not intend to convey to the trustee any beneficial interest in her residuary estate. It is manifestly impossible to restore the property to the testatrix. In such a case the parties will be put ¡as near¡ as may be in *statu quo* by imposing a resulting trust for the benefit of the heirs or next of kin of the testator or for his residuary devisee or legatee. 3 Scott on Trusts, § 411. There would seem to be no authority contrary to this principle, as the learned author in a note to a text statement substantially as above says that the cases are so numerous in its support that it is unnecessary to cite them. It is pertinent to remark here that such resulting trust does not arise by reason of any actual intention of the testatrix but by reason of a lack of any intention on her part that the trustee should have a beneficial interest if the trust expressed in the devise failed. See 3 Scott on Trusts, § 412. In other words, such resulting trust arises purely by operation of law.

Granting then that there is a resulting trust in the case at bar in favor of the heirs at law of the testatrix, the next question, and the one of primary importance to the parties here, is: Who answers to the description of heirs at law of the testatrix? Are they those who answered such descrip-

tion immediately upon her death or those who did so at the death of the last child without issue? Complainants contend that only those who answered such description at the later date can be considered the heirs of the testatrix for the purposes of such a resulting trust, because, as they claim, that is the time when the resulting trust first came into existence and vested. In support of this view they rely principally upon a South Carolina case, where the court was divided on the question two to one. *Blount* v. *Walker*, 31 S. C. 13. The reason which that court gave for its holding was that until the death of the life tenant without issue and without exercising a power of appointment given to her under the will there "was a mere possibility, not an estate, or even an interest in an estate, with the right of possession postponed", and that it was not capable of being passed by devise or inheritance. The court admitted that it could find no authority in point for this view but said that it decided the question upon principle and from analogies of decided cases. In a strong dissent Chief Justice Simpson rejected this view and held that even on the theory of a resulting trust arising by operation of law the *cestuis que trustent* must necessarily be the heirs at law of the testatrix and they are those upon whom the law casts the descent immediately upon the death of the ancestor.

Whether or not the Blount case is still the law of South Carolina we have not inquired, but from a reading of a more recent case, *Manigault* v. *Bryan*, 154 S. C. 78, wherein a portion of the dissent in the Blount case is quoted with approval, it would appear that some doubt has been cast on that case. However that may be in South Carolina, outside of that state the Blount case appears not to have been followed.

In *Farmers' Loan & Trust Co.* v. *Ferris*, 67 App. Div. 1, where the New York court seems to have been applying South Carolina law, it said that the Blount case should be limited to its peculiar facts. In an early case in New York the court, in applying the law of England to the case be-

fore it, appears to have followed a rule similar to the rule laid down in the Blount case. *Savage* v. *Burnham,* 17 N. Y. 561. Later New York cases, however, condemned that rule and said that it was "entirely at variance with the rule adopted and announced by English courts and text writers", and the Savage case was otherwise severely criticized and declared to be lacking in authority. *Simonson* v. *Waller,* 9 App. Div. 503, *Clark* v. *Cammann,* 14 App. Div. 127, a. 160 N. Y. 315; *Grinnell* v. *Howland,* 51 Misc. 132. *Beers* v. *Grant,* 110 App. Div. 152, cited by complainants, concerned testamentary language as to the time when the heirs should be determined, and hence it is not in point on the question here.

From our examination of the cases we are of the opinion that the Blount case is contrary to the weight of authority and should not be followed. See note 132 A. L. R. 1069-1077. In our view the resulting trust, arising as it does in favor of the testatrix's heirs by operation of law, and not by reason of any intention of the testatrix to be implied from expressions in her will, can only be construed to be for the benefit of those who answer the description of heirs according to law. Heirs are those upon whom the law casts the descent immediately upon the death of the ancestor. In the eyes of the law only such are or can be heirs. However, in seeking to find the intention of a testator where he has used the word "heirs" in making a testamentary provision, the courts have modified the strict rule of the law by declaring that the general rule applies unless it is clear from the will that the testator intended that those answering the description of his heirs should be determined at a time other than his death. *Goodgeon* v. *Stuart,* 50 R. I. 6. But this modification of the general rule is dependent for its application upon testamentary language before the court for construction. Such was the situation in the numerous cases cited and discussed by this court in *Starrett* v. *Botsford,* 64 R. I. 1. Manifestly they have no application to the instant cause wherein there is involved no testamentary language

whatever making provision as to the time when the testatrix's heirs are to be determined.

As we view the instant case no good reason appears for not applying the general rule here. This is especially true because here the testatrix's heirs take not under her will but by virtue of the law which casts the descent upon them. In a similar case the Delaware court applied the general rule and reasoned as follows: "At the death of the testatrix it was apparent that there would be a resulting trust in favor of the heirs of the testatrix, because there was then no child or grandchild of Ellen C. Cornog capable of taking under the will the one-fifth share given to Ellen for life and with remainder to her children or grandchildren. So also the persons then entitled to take were then ascertained, viz.: the distributees of the testatrix. Therefore the heirs or distributees of the estate of the testatrix took equitable vested interests in remainder after the death of Ellen C. Cornog, subject to be divested upon her leaving a child or grandchild." *Ford* v. *Wilson,* 85 A. (Del.) 1073, 1076. Applying this reasoning to the instant cause, there was at the death of the testatrix an equitable interest, not in remainder but more accurately in reversion, vested in her heirs, which interest would have been divested had there been a grandchild surviving the death of her last child.

We are of the opinion, therefore, that upon the death of Mary L. Fortin an equitable reversion in fee *then* vested *in interest* in favor of her heirs. Such reversion was subject to be divested by the happening of the contingency set out in her will, namely, the survival of a grandchild or grandchildren upon the death of her last child. However, since there was no such surviving grandchild at the death of her last child, the equitable reversion in such heirs then vested in possession.

The fact that the trustee had sold the real estate by leave of the superior court and converted it into personal estate does not, in our opinion, alter or affect the application of the principles above set forth. Nor does the complainants'

claim of estoppel appear to us to have any merit in preventing the application of such principles in favor of the respondent.

The parties may, on March 10, 1943, present to this court a form of decree, in accordance with this opinion, to be entered in the superior court.

*Edward F. Dwyer, Eugene L. Jalbert, Irving I. Zimmerman,* for complainants.

*Higgins & Silverstein, Ovila Lambert,* for respondent, Eugenie Fortin.

*John A. Tillinghast,* for respondent, Union Trust Co.

*William B. Sweeney,* for respondent, Old Colony Co-operative Bank.