**Cyril J. REDMOND et al.**

v.

**MANUFACTURERS HANOVER TRUST CO. et al.**

**No. 82–163–Appeal.**

Supreme Court of Rhode Island.

Dec. 13, 1984.

John V. Kean, Edwards & Angell, Providence, for plaintiffs.

Gregory L. Benik, Hinckley & Allen, Andrew H. Davis, Jr., Davis, Jenckes, Kilmary & Swan, Edwin H. Hastings, Tillinghast, Collins & Graham, Providence, for defendants.

## OPINION

MURRAY, Justice.

This is an appeal from a Superior Court judgment construing the will of Mary Isabelle Neilson and from its denial to modify that judgment.

This controversy was originally brought to Superior Court on April 12, 1976, by the executors of the estate of Frederic William Gebhard Neilson. They sought a declaration, pursuant to the provisions of the Uniform Declaratory Judgment Act, G.L.1956 (1969 Reenactment) chapter 30 of title 9, of their rights, status and other legal relations under the will of Mary Isabelle Neilson. The defendants Hunnewell and Cushing moved to dismiss the complaint as not properly brought under the Uniform Declaratory Judgment Act. The defendants' motion was granted by the Superior Court, but this court later held that the motion had been improperly granted. *Redmond v. Rhode Island Hospital Trust National Bank,* 120 R.I. 182, 386 A.2d 1090 (1978). In December 1978, an amended complaint was filed. Under the amended complaint Rhode Island Hospital Trust National Bank, trustee under the will of Mary Isabelle Neilson and a defendant in the original action, became a plaintiff, together with the executors of the estate of Frederic William Gebhard Neilson. The Superior Court rendered its decision in March 1982, adopting a construction of the will which was favorable to plaintiffs. The defendants Hunnewell and Cushing then filed an application for modification of that judgment. In December 1982 the Superior Court denied defendants' application for modification and an order to that effect was issued. This case is now before us on defendants' appeal.

The testatrix, Mary Isabelle Neilson, was a Newport resident who died on May 14, 1928. At the time of her death she was survived by a son, Jules Blanc Neilson, who later died on August 10, 1945. She also had two daughters, Mary Isabelle Hunnewell and Cathleen Vanderbilt Colford, both of whom predeceased her. The testatrix was also survived by the three grandchildren named in Clause "SEVENTH" of her will: namely, Frederic W. Neilson, who died August 22, 1937, and was survived by one child, Frederic William Gebhard Neilson; Alexander Milburn Neilson, who died without issue on September 7, 1938; and Isabelle Neilson, who died unmarried and without issue in April 1982. The testatrix had three other grandchildren who were not referred to in Clause "SEVENTH" of the will, namely, Hollis Hunnewell and Isabelle Kemp, the children of her predeceased daughter Mary Isabelle Hunnewell; and Cathleen Vanderbilt Arostegui, the sole daughter of her predeceased daughter Cathleen Vanderbilt Colford. Hollis Hunnewell is still living. Isabelle Kemp died without issue on July 6, 1953. Cathleen Vanderbilt Arostegui died on January 26, 1944, survived by her husband Martin de Arostegui y Adan (whose whereabouts are unknown) and one son, Harry C. Cushing IV.

Clause "SEVENTH" of the testatrix's will established a trust for the benefit of three of her grandchildren, Frederic W. Neilson, Alexander Milburn Neilson and Isabelle Neilson.[1] Each of these grandchildren received a life estate in the trust income, which in the event of his or her death would pass to their living issue. If any of the grandchildren died without issue, his or her share of the trust income would go per stirpes to the issue of the other grandchildren. Upon the death of the last of the three grandchildren, the trust res was to be divided among the living issue of those grandchildren. A problem arose when the last surviving grandchild, Isabelle Neilson, died, because at that time there was no living issue of any of the three grandchildren named in clause "SEVENTH" of the will. No provision had been made in the will for this occurrence. Thus, as to the trust res, Mary Isabelle Neilson died intestate.

The question before us for review is whether the Superior Court properly determined the manner in which the res should be distributed. It is undisputed that the res should pass to the heirs of the testatrix. There is disagreement, however, concerning the date upon which those heirs should be determined. The defendants, Hollis Hunnewell and Harry C. Cushing IV, argue that the testatrix's will should be construed so that in the event of intestacy, for purposes of the trust established in clause "SEVENTH" of the will, the heirs of the testatrix should be determined at the time of death of the last surviving life beneficiary. The plaintiffs argue that the testatrix's will should be construed so that her heirs would be determined as of the date of her death. The Superior Court construed the will in favor of plaintiffs, finding no intent of the testatrix to have her heirs determined at a time other than her death.

■■■ When a trial court is required to interpret a latent ambiguity in a trust, its findings must stand unless they are found to be clearly erroneous. *Prince v. Roberts,*

---

1. Clause "SEVENTH" reads:

 All of the rest, residue and remainder of the property, real or personal, of which I shall die seized or possessed, wherever situated or over which I shall have at the time of my death any power of disposition by will or by deed * * * I give, devise and bequeath to PAUL ENDICOTT WHITTEN, of the City of Mount Vernon, State of New York, and the RHODE ISLAND HOSPITAL TRUST COMPANY of Providence, Rhode Island, in trust nevertheless, for said Paul Endicott Whitten and said Rhode Island Hospital Trust Company hereinafter called my trustees, to hold, manage and control said trust property during the life of the last survivor of my grandchildren, FREDERIC W. NEILSON, ALEXANDER MILBURN NEILSON and ISABELLE NEILSON as are living at the time of my death, hereinafter referred to as said trust period and for my said trustees during said period to collect all the income thereof and after paying from such income all charges of administering the trust which in the opinion of said trustees are properly chargeable to income, to pay quarterly from the remaining or net income an annuity of Eight hundred dollars ($800) each year during his life to ALBERT COLLEY, for many years valet to my brother, Frederick Gebhard, and to pay over the remainder of said net income semi-annually in manner following, that is to say: One-third thereof to my said grandson FREDERIC W. NEILSON; one-third thereof to my said grandson ALEXANDER MILBURN NEILSON; and the remaining one-third thereof to my said granddaughter ISABELLE NEILSON; and after the decease of any such grandchild to pay to his or her issue then living the share of such income which their parent or ancestor, my said deceased grandchild, would have taken if living, and after the death of all issue of said deceased grandchild or after the decease of any such grandchild leaving no issue, to pay the share of such income to which the said grandchild was entitled, equally to my said surviving grandchildren and the living issue of any of my said grandchildren who shall then be deceased, said issue to take the share which their parent or ancestor would have taken if living; but wherever any income is given to the issue of any such deceased grandchild of mine by any of the foregoing provisions such issue shall take and receive the same only per stirpes and by representation of such deceased grandchildren of mine, and equally as between brothers and sisters; and at the death of the last survivor of such grandchildren living at the time of my decease, I direct my said trustees to transfer and pay over the property then constituting my trust estate to the issue of such grandchildren then living per stirpes and not per capita.

R.I., 436 A.2d 1078 (1981). After careful review of the record, we cannot say that the findings of the Superior Court were clearly erroneous and thus we affirm its decision.

The defendants have argued that the Superior Court misapplied the rule set forth in *Champagne v. Fortin*, 69 R.I. 10, 30 A.2d 838 (1943), that it was applied mechanically, and that its application resulted in a distribution of the trust res that is clearly contrary to the testatrix's intent.

The Superior Court's application of *Champagne* seems quite apt. *Champagne* involved an equity suit for the construction of a will. As in the case at hand, the testator in *Champagne* established a residuary trust for his grandchildren but did not foresee the possibility that they might die without issue. In determining who should take under the testator's will, the *Champagne* court wrote:

> [I]n seeking to find the intention of a testator where he has used the word "heirs" in making a testamentary provision, the courts have modified the strict rule of the law by declaring that the general rule applies [requiring that heirs be determined as of the date of death of the testator] unless it is clear from the will that the testator intended that those answering the description of his heirs should be determined at a time other than his death.

*Champagne v. Fortin*, 69 R.I. at 20, 30 A.2d at 843.

The Superior Court's application of the general rule was not in error. This court has previously reviewed the testatrix's will and found that "the will makes no provision for the disposition of the property considered under Clause SEVENTH in the event of a complete failure of issue on the part of the three grandchildren who were the life tenants." *Redmond v. Rhode Island Hospital Trust National Bank*, 120 R.I. at 184, 386 A.2d at 1091. There is no language that makes it "clear," as *Cham-*

*pagne* requires, that the testatrix intended her heirs to be determined at a time other than the time of her death.

Moreover, the lower court's application of the rule was not a mechanical one. The record reveals that the court examined the will in its entirety so as to determine the dominant intent of the testatrix. The trial justice below specifically found:

> 1) that nowhere in the testatrix' will is there any indication that she was contemplating any class other than the issue of the three named grandchildren as the ultimate beneficiaries of her residuary trust estate, (2) that there is an absence of testamentary direction in the event of failure of the express provisions in favor of such issue, (3) that the resulting trust, upon the death of the last surviving life beneficiary, defendant Isabelle Neilson, without issue, will arise in favor of the testatrix' heirs by operation of law and not be reason of any intention to be implied from expressions in her will, (4) that there is no testamentary language providing for the time when such heirs are to be determined, and (5) that the general rule should be applied which created at the death of the testatrix an equitable interest in reversion vested in her heirs at that time.

As the testatrix did not clearly indicate her desire to depart from the general rule, *Champagne* was properly applied. Lastly, although it may be true that the testatrix would not have wanted the trust res distributed to persons who were not blood relatives,[2] the circumstances that have arisen some fifty-five years after her death remain wholly unprovided for in the will. Accordingly, the argument that this distribution of the trust res would be unacceptable to the testatrix is little more than artful speculation.

The second issue for review is whether the Superior Court erred in denying defendants' application for modification. The

---

**2.** Under the trial court's construction, a portion of the trust res will pass to Martin de Arostegui y Adan, the widower of the testatrix's grandchild, Cathleen Vanderbilt Arostegui.

judge below found that the portion of the residuary trust that was to pass to the estate of Cathleen Vanderbilt Arostegui should not go directly to her son, Harry C. Cushing IV. The defendants argue that it should pass directly to Harry C. Cushing IV, that the decision of the Superior Court was erroneous as a matter of law, and that the futile search for Martin de Arostegui y Adan constituted newly discovered evidence justifying the modification.

 An application for modification is directed to the court's discretion. As such it is only to be disturbed upon a showing of a clear error of law or a manifest abuse of discretion. *Walker v. St. Laurent*, 103 R.I. 636, 240 A.2d 414 (1968). Finding no such error or abuse of discretion, we affirm the Superior Court's decision. Moreover, the Superior Court correctly denied the application for modification as it was filed in an untimely manner. Rule 59(e) of the Superior Court Rules of Civil Procedure provides that a motion to amend or alter a judgment shall be served not later than ten days after entry of that judgment. Judgment after remand was entered March 19, 1982, and the application to modify was not filed until October 22, 1982.

For the above-stated reasons the appeal is denied and dismissed, and the judgment of the Superior Court is affirmed.