FLEET NATIONAL BANK et al.

v.

Janet HUNT et al.

No. 2005–204–Appeal.

Supreme Court of Rhode Island.

April 7, 2008.

Ronald Eliot Gay, pro se, Heir–Appellant.

Wylma Gay Cooley, pro se, Heir–Appellant.

John M. Harpootian, Esq., for Janet Hunt and Lucille Foster.

Lauren E. Jones, Esq., Providence, for Settling Heirs–At–Law.

Leon C. Boghossian III, Esq., Providence, for Fleet National Bank, Trustee.

Present: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, and
SUTTELL, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The appellants, Ronald Gay and Wylma Cooley (appellants), appeal from a Superior Court order directing the distribution of assets under two trusts. This case originated when the petitioner, Fleet National Bank (Fleet), petitioned the Superior Court for instructions about the proper distribution of assets under three trusts, for which it serves as trustee. The three trusts are the Art Hadley Trust U/I dated January 15, 1936 (the Art Hadley Living Trust), the Art Hadley Trust U/W dated January 24, 1933 (the Art Hadley Testa-

mentary Trust), and the Frances E. Hadley Trust U/W dated February 12, 1965 (the Frances Hadley Trust) (collectively the Hadley trusts).[1]

To determine the proper distribution of the trusts' assets, the Superior Court was presented with two questions: (1) whether adult adoptees can inherit from the lineal ancestors of their adoptive parents when the trust itself directs the trustee to apply Rhode Island's intestacy laws for purposes of distributing the trust's assets and (2) whether adult adoptees are excluded from the definition of "issue" as used in a trust agreement. The Superior Court answered each question in the affirmative, which effectively precluded appellants from inheriting under either trust.

After reviewing both the trust and the relevant law in this state, we reach the same conclusion. Accordingly, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

The facts of this case were largely established in an agreed-upon statement of facts submitted to the Superior Court and are not contested on appeal.

Art Hadley, a self-made entrepreneur and Providence businessman, died on May 27, 1941. He was survived by his wife, Frances E. Hadley, and his two children, Thomas Hadley and Sarah Hadley. Thomas Hadley married Betty Hadley on March 8, 1962. At the time of her marriage to Thomas Hadley, Betty Hadley had two children, Janet Hunt and Lucille Foster. Frances Hadley died on August 25, 1968. On March 11, 1976, Thomas Hadley adopted the daughters of his wife, Betty, Janet Hunt and Lucille Foster, both of

whom were over eighteen years old. In 1993, Thomas Hadley died, having no biological children but survived by Betty Hadley and his two adopted daughters, Janet Hunt and Lucille Foster. Sarah Hadley died childless and unmarried on January 3, 2002. Her death triggered the distribution of the two Hadley trusts in dispute. At the time of her death, Art Hadley had no surviving children, or biological grandchildren, or biological issue. However, Thomas Hadley's two adopted daughters, Janet Hunt and Lucille Foster, were living.

## A

### The Art Hadley Living Trust

Before his death in 1941, Art Hadley established both a living trust and a testamentary trust. The Art Hadley Living Trust, executed on January 15, 1936, established a trust for the benefit of Art Hadley and his wife, Frances Hadley, that would terminate upon the last of their deaths and would be distributed to their children. On three subsequent occasions, Art Hadley amended this trust. The third amendment, on December 9, 1940, is the only amendment that affects the distribution of the trust assets.

In its final form, the Art Hadley Living Trust establishes a trust for the benefit of Art Hadley's wife, Frances Hadley, and his two children, Thomas Hadley and Sarah Hadley. According to the trust's terms, upon Frances Hadley's death, the trust income was to be paid, in the trustees' discretion, for the benefit of Art Hadley's two children, Thomas Hadley and Sarah Hadley. Upon the death of the last survivor of Art Hadley's children or his wife,

---

1. Although the Superior Court was asked to construe the Frances Hadley Trust, that trust has no significance to this appeal because appellants do not assert an interest in that trust.

the trust would terminate and the corpus would be distributed in fee simple to the children and issue then living of his two children, in equal shares *per stirpes.* If, however, Thomas Hadley or Sarah Hadley left no surviving issue, the trust contained a failure provision. That provision instructed:

"In case of the total failure of all of the trusts hereinbefore provided for with respect to the final disposition of the principal of the trust estate or any shares thereof, the Trustee shall transfer, convey and pay over the then principal of the trust estate, or such shares, as the case may be, discharged of these trusts, to and among those persons who would then be entitled to the personal estate of the Settlor under the laws of said State of Rhode Island had he then died intestate, a domiciled inhabitant of said State, according to the statutes of distribution then in force in said State, and in the shares and proportions provided by said statutes."

## B

### The Art Hadley Testamentary Trust

Through his will, dated January 24, 1933, and amended by two codicils, Art Hadley established the Art Hadley Testamentary Trust, consisting of the residue of his estate.

The Art Hadley Testamentary Trust provided that upon the death of the survivor of Art Hadley and his wife, Frances Hadley, the trust was to continue for the benefit of his children, Thomas Hadley and Sarah Hadley. The trust was to terminate upon the death of the last survivor of his children, at which time the corpus was to be distributed in fee simple to the children and issue then living of his two children, in equal shares *per stirpes.*

Unlike the Art Hadley Living Trust, the Art Hadley Testamentary Trust did not contain a failure provision.

## C

### Fleet's Petition

In late 2002, Fleet, in its capacity as trustee of the Hadley Trusts, petitioned the Superior Court seeking instructions about the proper construction of language used in these trusts and instructions relative to the proper distribution of funds under these instruments. Specifically, Fleet informed the court that uncertainties in Rhode Island law with respect to the inheritance rights of adopted adult children, coupled with ambiguities in the language of the trusts, compelled it to seek the court's instructions to avoid liability in distributing the trusts' assets.

The respondents, all parties who asserted an interest in the trusts, are as follows: (1) Janet Hunt and Lucille Foster, the adopted children of Thomas Hadley; (2) Marcia Hanrahan, the executrix and a potential beneficiary of Sarah Hadley's estate; (3) Cynthia Gay, a potential beneficiary of Sarah Hadley's estate;[2] (4) Allyson Gay, Wendy Gay, Robert Seeley, Diana Robertson, Suzanne Beyer, Cynthia Gay, Sheila Gay Franklin, Ronald Gay, Wylma Cooley, Stephen Gay, and Nancy Miller, all potential beneficiaries of Art Hadley's estate; (5) Stephen R. Lucas, Donald J. Lucas, Jeffrey C. Lucas, Fay C. Drummond, Raymond J. Harrison,[3] R.

2. Cynthia Gay died on October 17, 2006, after this appeal was taken. Her interest is represented in this matter by her daughter, Sarah Gay Dagher, in her capacity as personal representative of the estate of Cynthia Gay.

3. Raymond J. Harrison died on October 6, 2006, after this appeal was taken. His interest is represented in this matter by Winford T. Frady Jr., in his capacity as administrator of the estate of Raymond J. Harrison.

Carol Justice, Clair Perry, Elizabeth Robinson, Brigette Young, Sigrid J. Reddon, Sharon Glover, Eugene E. Perry II, Jane Cranston,[4] and S. Bruce Allsop, all potential beneficiaries of Frances Hadley's estate (collectively respondents).

On March 9, 2005, the Superior Court issued a written opinion in which it concluded that this Court's opinion in *Tinney v. Tinney*, 799 A.2d 235, 237–38 (R.I.2002), made it clear that under Rhode Island's intestacy laws, there is no distinction between adult adoptees and minor adoptees. Therefore, under Rhode Island's intestacy laws adult adoptees are deemed heirs of their adoptive parents, as if they were their natural children.

Adhering to this principle, the Superior Court ruled that Thomas Hadley's two adopted daughters, Janet Hunt and Lucille Foster, stood to inherit under the failure provision of the Art Hadley Living Trust. With respect to the Art Hadley Testamentary Trust, however, the Superior Court ruled that Janet Hunt and Lucille Foster were not lawfully the "issue" of Thomas Hadley and were, therefore, not entitled to the amount specifically designated for Thomas Hadley's issue under the trust.

Dissatisfied with the Superior Court's ruling, every respondent, with the exception of Janet Hunt and Lucille Foster, appealed to this Court.

Before the matter reached this Court for briefing and argument, all parties—except appellants—agreed upon the appropriate settlement of all matters raised by Fleet's petition through this Court's Appellate Mediation Program. Accordingly, a distribution order was entered, providing the settling parties with a fixed percentage of the settlement corpus. Pursuant to the order, an amount equal to the maximum amount claimed by appellants was set aside, in the event that either of these two parties prevailed on appeal.

With many of these matters disposed of, the only question remaining before this Court on appeal is the interpretation of the two trusts in which appellants Ronald Gay and Wylma Cooley claim an interest.

## II

### Analysis

In their *pro se* appeals to this Court, appellants argue that the trial justice erred in his interpretation of both the Art Hadley Living Trust and the Art Hadley Testamentary Trust. The appellants argue that it was an error for the trial justice to permit the Art Hadley Living Trust to be distributed to two women who were over the age of eighteen when they were adopted by Art Hadley's son. They further argue that the trial justice erred when he defined Art Hadley's heirs for purposes of distributing the Art Hadley Testamentary Trust as those individuals living at the time of Art Hadley's death. Rather, appellants urge this Court to overrule the law set forth in prior cases and hold that Art Hadley's heirs should be ascertained as of the time of the trust's failure.[5]

### A

### Standard of Review

▮ The interpretation of a trust instrument presents a question of law that

---

4. Jane Cranston died on August 19, 2006, after this appeal was taken. Her interest is represented in this matter by her heirs-at-law, Jane Cranston Frazier and Richard R. Cranston Jr.

5. The appellants also argue that they are entitled to a *per capita,* not a *per stirpes* distribution of the trust assets. Because we decide that appellants do not stand to inherit under the trusts at all, we need not address this issue.

this Court reviews *de novo*. *Arena v. City of Providence*, 919 A.2d 379, 387 (R.I. 2007); *see also In re Trusts Created by Ferguson*, 929 P.2d 33, 35 (Colo.Ct.App. 1996); *In re Trusteeship Created by the City of Sheridan, Colorado*, 593 N.W.2d 702, 708 (Minn.Ct.App.1999). We conduct a *de novo* review to determine whether the trial justice committed legal error because "this Court is in the best position to decide the merits of a given question of law." *Lett v. Providence Journal Co.*, 798 A.2d 355, 363 (R.I.2002) (quoting *Votolato v. Merandi*, 747 A.2d 455, 460 (R.I.2000)).

## B

### Distribution of the Art Hadley Living Trust

With respect to the Art Hadley Living Trust, appellants urge this Court to recognize that Art Hadley intended to benefit only his blood relatives and not his adoptive grandchildren. Janet Hunt and Lucille Foster, however, contend that the trial justice properly recognized their interest in the trust in accordance with Rhode Island intestacy laws.

We begin our analysis by looking to the plain language of the trust itself, in an effort to effectuate the settlor's intent. Indeed, we have held that "[t]his court's 'primary objective when construing language in a will or trust is to ascertain and effectuate the intent of the testator or settlor as long as that intent is not contrary to law.'" *In re DiBiasio*, 705 A.2d 972, 973 (R.I.1998) (quoting *Prince v. Roberts*, 436 A.2d 1078, 1080 (R.I.1981)).

The Art Hadley Living Trust provides for the final distribution of the trust estate to the living "issue" of Art Hadley's two children, Thomas Hadley and Sarah Hadley. Unfortunately, the trust itself is silent about the definition of issue. In the context of wills and estates, Black's Law Dictionary defines issue as "lineal descendants; offspring." Black's Law Dictionary 850 (8th ed. 2004). Further complicating the distribution of the Art Hadley Living Trust, neither Thomas Hadley nor Sarah Hadley had any biological children. The only individuals who potentially could qualify as "issue" are Thomas Hadley's adopted daughters, Janet Hunt and Lucille Foster, leaving this Court to resolve whether they are lawfully Thomas Hadley's "issue," as referred to in the Art Hadley Living Trust.

General Laws 1956 § 15–7–16 governs the extent to which adoptive kindred may inherit from an adoptive parent. Subsection (a) of § 15–7–16 provides in relevant part:

"A child lawfully adopted shall be deemed, for the purpose of inheritance by the child and his or her descendants from the parents by adoption and the lineal and collateral kindred of the parents by adoption, and for the purpose of inheritance by the parents by adoption, and the lineal and collateral kindred of the parents by adoption, from the child and his or her descendants, and for all other legal consequences and incidents of the natural relation of parents and children, except as provided in § 15–7–17, the child of the parents by adoption the same as if he or she had been born to them in lawful wedlock."

In *Tinney*, this Court interpreted this statutory language and concluded that the General Assembly intended the term "child" to mean "son or daughter of a parent, regardless of age, and that there was no distinction intended between the inheritance rights of a 'child' adopted as a minor and 'persons' adopted as adults." *Tinney*, 799 A.2d at 237–38. Based on this conclusion, we held that an adoptee, who was thirty-eight years old at the time of his adoption, could inherit from his adop-

tive mother under Rhode Island's intestacy laws. *Id.* at 235, 237–38.

Although appellants recognize our holding in *Tinney,* they contend that the exclusion contained in § 15–7–16(a) applies to this case and should operate to exclude Janet Hunt and Lucille Foster from inheriting under Art Hadley's testamentary trust. The statutory exclusion provides, in relevant part:

> "In the construction of any instrument, whether executed before or after May 8, 1956, a child so adopted and the descendants of the child shall be deemed within a limitation to the lawful heirs, issue, children, descendants, or the like, as the case may be, of the parent or parents by adoption, unless a contrary intention shall appear by the terms of the instrument or unless the particular estate so limited has vested in and as to the person or persons entitled to it on April 20, 1962; provided, *that this sentence shall not apply in the construction of any instrument as to any child who is over the age of eighteen (18) years at the time of his or her adoption and who is adopted after the death of the maker of the instrument.*" Section 15–7–16(a). (Emphasis added.)

This Court's primary focus when construing a statute is to determine the General Assembly's underlying intent and to give it effect. *Tinney,* 799 A.2d at 236–37 (citing *R & R Associates v. City of Providence Water Supply Board,* 765 A.2d 432, 436 (R.I.2001)). "[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Id.* at 237 (quoting *Mottola v. Cirello,* 789 A.2d 421, 423 (R.I.2002)).

Examining the plain language of the statute as a whole, we reach three conclusions with respect to the rights of adoptees to inherit from the lineal ancestors of his or her adoptive parents. First, under Rhode Island law, all children eighteen years of age or younger at the time of their adoption may inherit from the lineal ancestors of their adoptive parents. *See Tinney,* 799 A.2d at 237. Second, under Rhode Island intestacy law, individuals who are over the age of eighteen at the time of their adoption may inherit from the lineal ancestors of their adoptive parents. *See id.* Third, when construing a writing, the definition of "lawful heirs, issue, children, [or] descendants" does not include those persons who were over the age of eighteen at the time of their adoption. Section 15–7–16(a).

Our interpretation of § 15–7–16(a) precludes Janet Hunt and Lucille Foster from being considered Thomas Hadley's "issue," as that term is used in the Art Hadley Living Trust, because they were over the age of eighteen at the time of their adoption. Therefore, the distribution of assets contemplated in the Art Hadley Living Trust failed in its entirety.

This conclusion, however, does not end our analysis. Perhaps foreseeing that the provisions for the trust's distribution could fail, the Art Hadley Living Trust also included a failure clause, which specified that in the case of the trust's failure, Rhode Island's intestacy laws should be applied to distribute the remaining trust assets.

Accordingly, we must determine the beneficiaries of the Art Hadley Living Trust under Rhode Island intestacy law in effect at the time of the trust's failure— Sarah's death in 2002. General Laws 1956 § 33–1–10, in place in 2002, governs the distribution of personal property. That statute provides:

> "**Surplus personalty not bequeathed.**—The surplus of any chattels or personal estate of a deceased person,

not bequeathed, after the payment of his or her just debts, funeral charges, and expenses of settling his or her estate, shall be distributed by order of the probate court which shall grant administration in the manner following:

"(1) The sum of fifty thousand dollars ($50,000) from the surplus and one-half (1/2) of the remainder to the widow or surviving husband forever, if the intestate died without issue.

"(2) One-half (1/2) of the surplus to the widow or surviving husband, forever, if the intestate died leaving issue.

"(3) The residue shall be distributed among the heirs of the intestate in the same manner real estates descend and pass by this chapter, but without having any respect to the life estate and discretionary allowance provided by §§ 33–1–5 and 33–1–6."

Furthermore, § 33–1–1 governs the distribution of real estate. That statute provides:

"**Real estate descending by intestacy to children or descendants, parents, or brothers and sisters.**—Whenever any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in equal portions to his or her kindred, in the following course:

"(1) First to his children or their descendants, if there are any.

"(2) Second if there be no children nor their descendants, then to the parents in equal shares, or to the surviving parent of such intestate.

"(3) Third if there is no parent, then to the brothers and sisters of the intestate, and their descendants."

These statutes, read together, make it clear that the surplus of the Art Hadley Living Trust should be distributed to Art Hadley's kindred. At the time of Sarah Hadley's death, Art Hadley's wife, Frances Hadley, and son, Thomas Hadley, were deceased. The only remaining question is whether Janet Hunt and Lucille Foster qualify as Art Hadley's kindred. Because we already have determined that, pursuant to Rhode Island intestacy law an adopted adult qualifies as an heir, issue, child, or descendant of his or her adoptive parent, we conclude that Janet Hunt and Lucille Foster are the proper beneficiaries of the Art Hadley Living Trust.

## C

### Distribution of the Art Hadley Testamentary Trust

Much like the Art Hadley Living Trust, the Art Hadley Testamentary Trust provided for the ultimate distribution of the trust corpus to the children and issue of Art Hadley's children, in equal shares *per stirpes*. This distribution was to take place upon the death of the survivor of Art Hadley's children.

Therefore, the trust corpus was to be distributed at the time of Sarah Hadley's death in 2002 to the children and issue then living of Thomas Hadley and Sarah Hadley. However, neither Thomas Hadley nor Sarah Hadley left any natural issue. Furthermore, as indicated by the foregoing analysis, when interpreting the term "issue" for the purposes of construing a trust instrument, adoptees who were over the age of eighteen at the time of their adoption do not qualify as "issue" of their adoptive parents. Therefore, Janet Hunt and Lucille Foster cannot be considered "issue" of Thomas Hadley as defined by the Art Hadley Testamentary Trust. Accordingly, the absence of any issue caused the trust to fail in 2002.

Unlike the Art Hadley Living Trust, the Art Hadley Testamentary Trust did not contain a failure clause. Therefore, Rhode

Island's intestacy laws must be applied to ascertain the proper beneficiaries of the failed trust. *See* G.L. 1956 § 33–6–30 ("All real and personal property, not devised or bequeathed in the last will and testament of any person shall be distributed in the same manner as if the person had died intestate.").

Although appellants agree that the laws of intestacy should apply in the case of a trust's failure, they urge this Court to recognize that Art Hadley's heirs should be determined as of the date of the trust's failure. We disagree. This Court consistently has held that in the case that a testamentary trust fails, the decedent's heirs-at-law should be determined as of the date of the decedent's death. *See Redmond v. Manufacturers Hanover Trust Co.*, 484 A.2d 906, 909 (R.I.1984) (citing *Champagne v. Fortin*, 69 R.I. 10, 20, 30 A.2d 838, 843 (1943)).

This very issue arose in the 1943 case *Champagne v. Fortin*, 69 R.I. 10, 30 A.2d 838 (1943). In that case, the decedent had established a testamentary trust for the benefit of her children. *Id.* at 12, 30 A.2d at 839. The trust specified that upon the death of the decedent's children, the trusts were to be divided among the children of the decedent's children (the decedent's grandchildren). *Id.* However, all the decedent's children died childless and the trust failed to provide instructions for the trustee with respect to the distribution of the trust's corpus in the event that the trust provisions failed. *Id.* at 11–13, 30 A.2d at 839. Examining the predicament that resulted from the trust's failure, this Court explained that "[i]t is manifestly impossible to restore the property to the testatrix. In such a case the parties will be put as near as may be in status quo by imposing a resulting trust for the benefit of the heirs or next of kin of the testator or for his residuary devisee or legatee."

*Id.* at 18, 30 A.2d at 842 (citing 3 *Scott on Trusts* § 411).

Our determination that a resulting trust for the benefit of the decedent's heirs-at-law was appropriate did not end our analysis, however. *Champagne,* 69 R.I. at 18, 30 A.2d at 842. Instead, we were left to decide who qualified as the decedent's heirs-at-law. *Id.* We concluded,

"[i]n our view the resulting trust, arising as it does in favor of the testatrix's heirs by operation of law, and not by reason of any intention of the testatrix to be implied from expressions in her will, can only be construed to be for the benefit of those who answer the description of heirs according to law. Heirs are those upon whom the law casts the descent immediately upon the death of the ancestor. In the eyes of the law only such are or can be heirs." *Id.* at 20, 30 A.2d at 842–43.

According to this Court, this general rule applies, requiring that heirs be determined at the date of the testator's death, unless the testator made it clear in the instrument that he or she intended that the heirs be determined at some other time. *Id.* at 20, 30 A.2d at 843.

More than forty years later, this Court reaffirmed its central holding in *Champagne* in *Redmond,* a case involving substantially similar facts. In *Redmond,* 484 A.2d at 908, the decedent created a trust for the benefit of her grandchildren. Upon the death of the decedent's grandchildren, the trust corpus was to be distributed to the issue of her grandchildren. *Id.* However, much like in *Champagne* and the matter now before this Court, when the last living grandchild died, there were no living issue of any of the decedent's grandchildren, nor was there a provision specifying an alternative distribution. *Id.* In *Redmond,* this Court ex-

pressly followed the rule expounded in *Champagne* and directed that the heirs-at-law be determined based on the date of the decedent's death. *Id.* at 909.

We see no reason to deviate from these holdings. When the Art Hadley Testamentary Trust failed upon Sarah Hadley's death in 2002, a resulting trust arose in favor of Art Hadley's heirs-at-law. Applying the rule espoused in *Champagne* and reaffirmed in *Redmond,* Art Hadley's heirs-at-law at the time of his death were his survivors, Frances Hadley, Thomas Hadley, and Sarah Hadley. Under the laws of intestacy, one half of Art Hadley's estate should be distributed to the estate of his spouse, Frances Hadley, and the remaining is to be divided equally among the estates of his children, Thomas Hadley and Sarah Hadley.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court. The amount set aside for the appellants pursuant to the mediation of this matter shall be distributed in accordance with the Distribution Order entered on June 6, 2007.

Justice ROBINSON did not participate.